UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------- X

IN RE EDGEWELL PERSONAL CARE CO.          **MEMORANDUM & ORDER**
LITIG.                                     16-cv-3371 (KAM)(RLM)

--------------------------------- X

**MATSUMOTO, United States District Judge:**

Plaintiffs Paul Lambrakis, Laurel Birmingham, Dyan D'Aversa, Felipe Romero, Tracy Fernandez, Christina Newland, and Mark Nabong[1] (collectively, "plaintiffs") bring this putative class action against defendants Playtex Products, LLC, Edgewell Personal Care Company, Sun Pharmaceutical, LLC, Edgewell Personal Care, LLC, and Edgewell Personal Care Brands, LLC (collectively, "defendants") for allegedly marketing two of their products with a false Sun Protection Factor ("SPF")[2] rating.  Lambrakis is a citizen of New York and resident of Kings County, New York.  Birmingham and Felipe Romero are citizens of California; Birmingham resides in Los Angeles County

---

[1] Plaintiff Ingrid Anglin voluntarily dismissed her claims on December 5, 2017.  (ECF No. 51, Notice of Voluntary Dismissal.)  Colleen Gorman is listed as a plaintiff on the ECF docket, but she is not included as a plaintiff in the Second Amended Consolidated Complaint, and the court considers her claims to have been voluntarily dismissed.  (*See generally* ECF No. 31, Second Amended Consolidated Complaint.)

[2] "SPF is a measure of how much solar energy (UV radiation) is required to produce sunburn on protected skin (i.e., in the presence of sunscreen) relative to the amount of solar energy required to produce sunburn on unprotected skin."  U.S. Food & Drug Administration, https://www.fda.gov/aboutfda/centersoffices/officeofmedicalproductsandtobacco/cder/ucm106351.htm (last visited August 31, 2018).

and Romero resides in South Gate County.  Dyan D'Aversa and Tracey Fernandez are citizens of New Jersey; D'Aversa resides in Burlington County and Fernandez resides in Essex County. Christina Newland is a citizen of Florida residing in Broward County.  Mark Nabong is a citizen of Illinois who resides in Cook County.

Before the court is defendants' motion to dismiss or stay plaintiffs' Second Amended Consolidated Complaint, which includes defendants' requests to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) as well as defendants' motion to strike pursuant to Federal Rule of Civil Procedure 12(f).  For the reasons stated below, defendants' motion is granted in part and denied in part.

**BACKGROUND**

I.  <u>Factual Background</u>

Plaintiffs allege that they purchased two Banana Boat sunscreen products – Banana Boat Kids and Banana Boat Baby – that were advertised as being water resistant and having SPF 50 (collectively, the "Products").  Specifically, plaintiffs allege that the individual plaintiffs made the following purchases: Lambrakis purchased Banana Boat Kids SPF 50 sunscreen lotion in April and May 2016 (ECF No. 31, Second Amended Consolidated Complaint ("SACC") ¶ 16); Nabong purchased "two 2 ounce containers of Banana Boat Kids SPF 50 sunscreen lotion . . . for

2

which he paid about $2.00 each" (*id.* ¶ 17); D'Aversa purchased
Banana Boat Kids SPF 50 sunscreen "on several occasions" since
June 26, 2016, including purchases of the "8 ounce tube" for
$6.35 and the "12 ounce 'family size' pump" (*id.* ¶ 18);
Fernandez purchased a "2 ounce tube of Banana Boat Kids SPF 50
lotion" in March 2016 (*id.* ¶ 19); Birmingham purchased an "8
ounce tube of Banana Boat Kids SPF 50 sunscreen lotion for
approximately $13" (*id.* ¶ 20); Romero purchased "an 8 ounce tube
of Banana Boat Kids SPF 50 sunscreen lotion" for $11.49 on July
2, 2016 (*id.* ¶ 21); and Newland purchased "an 8 ounce tube of
Banana Boat Baby SPF 50 on June 12, 2016 for $13.99" (*id.* ¶ 22).

    Plaintiffs allege that at least three separate tests
reveal that the Products, or at least the Banana Boat Kids SPF
50 sunscreen lotion, do not actually have an SPF of 50.[3]  First,
plaintiffs cite to a *Consumer Reports* article from May 2016,
which reported that its own testing revealed that Banana Boat
Kids SPF 50 sunscreen lotion actually had an SPF of 8.  (*Id.* ¶
40.)  Second, plaintiffs claim to have conducted their "own
independent testing of Banana Boat Kids SPF 50 sunscreen lotion,
utilizing the methodology for SPF testing mandated by the" Food
and Drug Administration (the "FDA"), which found that the

---

[3] At oral argument on the motion to dismiss, plaintiffs represented that they
are "relying on [Food and Drug Administration]-compliant testing per the
protocol . . . ."  (ECF No. 59, January 10, 2018 Oral Argument Transcript
("Oral Arg. Tr.") at 30.)

sunscreen "had an actual SPF substantially lower than the claimed SPF 50." (*Id.* ¶¶ 41-43.)  Third, plaintiff Lambrakis allegedly sent a sample of the Banana Boat Kids SPF 50 sunscreen lotion that he purchased in May 2016 to CRL Suncare, LLC ("CRL"), a laboratory in Winston Salem, North Carolina. (*Id.* ¶ 44.)  CRL's investigation allegedly resulted in a finding that the sunscreen contained an SPF of 12.69. (*Id.* ¶ 45.)

## II.   Procedural Background

Plaintiffs filed seven class action lawsuits in federal courts in six states (New York, New Jersey, California, Florida, Illinois, and Missouri) alleging defendants inaccurately labeled the Products as having SPF 50 when the SPF was actually lower than 50.  Plaintiffs and defendants agreed to transfer six of the actions to this court, which presides over the first filed action.  On October 27, 2016, the court granted the parties' request to consolidate the seven actions. (ECF No. 25, Stipulation and Order to Consolidate Cases for Pre-Trial Proceedings.)

On November 4, 2016, plaintiffs filed the First Amended Consolidated Complaint. (ECF No. 26, Plaintiffs' First Amended Consolidated Complaint.)  After a pre-motion conference, plaintiffs filed the Second Amended Consolidated Complaint (the "SACC") on January 12, 2017. (ECF No. 31, Plaintiffs' Second Amended Consolidated Complaint ("SACC").)

4

In the SACC, plaintiffs seek damages and equitable remedies pursuant to statutory and common law claims for themselves and members of the putative classes.[4]  Specifically, plaintiffs claim: (1) breach of warranty (Count I); (2) breach of implied contract through violation of the implied covenant of good faith and fair dealing (Count II); (3) declaratory and injunctive relief (Count III); (4) quasi-contract/disgorgement/restitution (Count IV); and violations of (5) New York General Business Law § 349 (Count V); (6) New York General Business Law § 350 (Count VI); (7) New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* (Count VII); (8) New Jersey Truth in Consumer Contract, Warranty, and Notice Act N.J.S.A. §§ 56:12-14, *et seq.* (Count VIII); (9) California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Count IX); (10) California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* (Count X); (11) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505/1, *et seq.* (Count XI); and (12) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* (Count XII).[5]

---

[4] In the SACC, plaintiffs seek certification of a nationwide class and five state-specific subclasses (New York, New Jersey, California, Florida, and Illinois) each pertaining to persons who purchased Banana Boat Kids SPF 50 sunscreen lotion during the period of June 22, 2010 to present.  (ECF No. 31, SACC ¶¶ 68-70.)

[5] Plaintiffs bring Counts I, II, and III on behalf of the putative nationwide class and each state subclass.  They bring Count IV only on behalf of the putative nationwide class.  They bring Counts V and VI on behalf of the New York subclass, Counts VII and VIII on behalf of the New Jersey Subclass,

Defendants served plaintiffs with the instant Motion to Dismiss or Stay the SACC on March 22, 2017. (ECF No. 35, Motion to Dismiss or Stay Plaintiffs' SACC ("Def. Mot. to Dismiss"); ECF No. 37, Memorandum of Law in Support of Defendants' Motion to Dismiss or Stay Plaintiffs' SACC ("Def. Mem.").) Briefing regarding that motion was completed on May 24, 2017. (*See* ECF No. 37, Def. Mem.; ECF No. 39, Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss or Stay Plaintiffs' SACC ("Pl. Mem."); ECF. No. 41, Reply in Support of Defendants' Motion to Dismiss or Stay Plaintiffs' SACC ("Def. Reply Mem.").)

On January 10, 2018, the court heard oral argument on the instant motion. Following oral argument, the parties attempted to settle, but, on March 9, 2018, they reported to the court that their efforts had been unsuccessful. (*See* ECF No. 57, Joint Letter Regarding Settlement.)

Since briefing for the motion to dismiss or stay was completed on May 24, 2017, plaintiffs have provided the court with three additional sources of authority and defendants have provided the court with updated information from the FDA regarding its actions pertaining to SPF ratings. (ECF No. 45, Plaintiffs' Letter Attaching Court's Decision in *Dayan v. Swiss-*

---

Counts IX and X on behalf of the California subclass, Count XI on behalf of the Illinois subclass, and Count XII on behalf of the Florida subclass.

6

*American Prods.*, No. 15-cv-6895 (E.D.N.Y.); ECF No. 58,
Plaintiffs' Letter Attaching Court's Decision in *Carrol et al.
v. S.C. Johnson & Son, Inc. et al.*, No. 17-cv-5828 (N.D. Ill.);
ECF No. 61, Plaintiffs' Letter Attaching Court's Decision in
*Keskinen v. Edgewell Personal Care Co., et al.*, No. 17-cv-7721
(C.D. Cal.); ECF No. 62, Defendants' Letter Regarding FDA
Statement.)

**LEGAL STANDARDS**

### I.  <u>Rule 12(b)(6) Motion to Dismiss</u>

To survive a motion to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint
must contain sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.' "
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is
plausible "when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Id.*  The court accepts all
factual allegations in the complaint as true and draws all
reasonable inferences in the favor of plaintiff, the non-movant.
*Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  The court is
"not bound to accept as true a legal conclusion couched as a
factual allegation." *Twombly*, 550 U.S. at 555 (citations and
internal quotation marks omitted).

In ruling on a motion to dismiss, a court may consider any instrument attached to the complaint as an exhibit. *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014). Moreover, a court may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). A court need not accept the allegations in a complaint as true if they are "contradicted by . . . documentary evidence . . . from the exhibits attached" to the complaint. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## II.   Rule 12(b)(1) Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)")] when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The standard for reviewing a Rule 12(b)(1) motion to dismiss is similar to the Rule 12(b)(6) standard, except that the court may consider matters beyond the pleadings that bear on subject matter jurisdiction, and "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

8

## III.   <u>Rule 12(f) Motion to Strike</u>

Pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"), "[a] court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Resolution of a Rule 12(f) motion is at the district court's discretion. *See E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004). "[T]o prevail on a Rule 12(f) motion to strike, the movant must show (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Lynch v. Southampton Animal Shelter Foundation Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (internal quotation marks omitted); *Laverpool v. New York City Transit Auth.*, 760 F. Supp. 1046, 1061 (E.D.N.Y. 1991) (applying the standard to, *inter alia*, a motion to strike redundant allegations).  Although courts have the discretion to grant a motion to strike, "courts should not tamper with the pleadings unless there is a strong reason for doing so." *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002) (citing *Lipsky*, 551 F.2d at 893); *see also Lynch*, 278 F.R.D. at 69 (referring to a motion to strike as a "drastic remedy").

## DISCUSSION

Defendants argue that a dismissal or stay is appropriate on the basis that the FDA has primary jurisdiction over the action.  In the alternative, defendants argue that Counts II, III, VII, and XI, should be dismissed for failure to state a claim, and Request for Relief (d), which asks for injunctive and declaratory relief, should be stricken and, in part, dismissed for lack of standing.

The court first considers the threshold issue of whether the court should abstain from hearing this action pursuant to the doctrine of primary jurisdiction.  Because the court concludes that primary jurisdiction does not apply here, the court next evaluates the merits of defendants' arguments to dismiss certain claims and to strike plaintiffs' requests for injunctive and declaratory relief.

## I.   Motion to Dismiss or Stay on the Basis of Primary Jurisdiction

Defendants seek to dismiss or stay this action on grounds that the doctrine of primary jurisdiction requires the FDA to hear this matter in the first instance because it involves SPF designations, which are regulated by the FDA.  (ECF No. 37, Def. Mem. at 22-38[6].)  Plaintiffs argue that primary jurisdiction is inapposite because the "sole issue" in this

---

[6] The court refers to the page numbers assigned by the Electronic Case Filing ("ECF") System.

10

matter is legal in nature and within the realm of judicial

decision-making.[7]  (ECF No. 39, Pl. Mem. at 8.)

The doctrine of primary jurisdiction seeks to

"promot[e] proper relationships between the courts and

administrative agencies charged with particular regulatory

duties."  *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d

Cir. 2006) (citation and internal quotation marks omitted).  The

doctrine applies when "enforcement of [a] claim requires the

resolution of issues which, under a regulatory scheme, have been

placed within the special competence of an administrative body."

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).

Although there is no "fixed formula" for determining when

primary jurisdiction applies, courts generally focus on four

factors:

> (1) whether the question at issue is within the
> conventional experience of judges or whether it
> involves technical or policy considerations within the
> agency's particular field of expertise; (2) whether
> the question at issue is particularly within the
> agency's discretion; (3) whether there exists a

---

[7] Following the completion of briefing, plaintiffs filed three letters
attaching supplemental authority for plaintiffs' arguments in opposition to
the motion to dismiss or stay.  Plaintiffs rely on two of those authorities
for the argument that plaintiffs' claims are not "preempted" by the Food Drug
and Cosmetics Act.  (*See* ECF No. 45, Plaintiffs' Letter Attaching Court's
Decision in *Dayan v. Swiss-American Prods.*, No. 15-cv-6895 (E.D.N.Y.); ECF
No. 58, Plaintiffs' Letter Attaching Court's Decision in *Carrol et al. v.
S.C. Johnson & Son, Inc. et al.*, No. 17-cv-5828 (N.D. Ill.).)  However, the
court notes that defendants do not argue that plaintiffs' claims are
preempted.  Rather, they argue that dismissal or a stay is appropriate on the
basis of *primary jurisdiction*, which neither *Dayan v. Swiss-American Prods.*,
No. 15-cv-6895 (DLI) (VMS), 2017 WL 1214485 (E.D.N.Y. Mar. 31, 2017), nor
*Carrol et al. v. S.C. Johnson & Son, Inc. et al.*, No. 17-cv-5828 (CRN), 2018
WL 1695421 (N.D. Ill. Mar. 29, 2018), addresses.

> substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82-83.

"[T]he Supreme Court has consistently held that there are only two purposes to consider in determining whether to apply the primary jurisdiction doctrine – uniformity and expertise." *Id.* at 90. As such, the doctrine has a "relatively narrow scope" and does not apply when the issue at hand falls within the "traditional realm of judicial competency." *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988). Primary jurisdiction "should generally be reserved for resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *King v. Time Warner*, 113 F. Supp. 3d 718, 724 (S.D.N.Y. 2015) (internal quotations marks omitted); *see also Jovel v. i-Health, Inc.*, No. 12-cv-5614 (JG), 2013 WL 5437065, at *7 (E.D.N.Y. Sept. 27, 2013) ("[T]he primary jurisdiction doctrine 'is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit[]' . . . ." (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008))).

Where primary jurisdiction applies and a court refers the matter to an administrative agency, the court "has discretion either to retain jurisdiction or, if the parties

would not be unfairly disadvantaged, to dismiss the case without prejudice." *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993).

Applying the four factors, the court finds that primary jurisdiction is inappropriate here and denies defendants' request to dismiss or stay this action pursuant to the doctrine of primary jurisdiction.

A. <u>Technical Expertise of Agency versus Conventional Experience of Judges</u>

Plaintiffs' claims fall within the conventional experience of judges.  Without a doubt, the FDA has regulated SPF testing and labeling.  *See* 21 C.F.R. § 201.327.  However, plaintiffs do not ask the court to opine on the appropriateness of, or interfere with, the FDA's protocols for determining SPF ratings or the FDA's SPF designations for the Products.  Rather, plaintiffs advance a relatively straightforward claim that, *inter alia*, defendants have violated FDA regulations and marketed a product claiming to have a false SPF that could mislead a reasonable customer.  (ECF No. 31, SACC ¶¶ 7-8.)

Courts are well-equipped to assess whether a label is misleading.  *See Gubala v. CVS Pharmacy, Inc.*, No. 14-cv-9039 (TMD), 2016 WL 1019794, at *16 (E.D. Ill. Mar. 15, 2016) ("The Court is well qualified to interpret the regulations and to resolve matters regarding allegations of false and misleading representations." (collecting cases)); *Elkind v. Revlon Consumer*

*Prod. Corp.*, No. 14-cv-2484 (JS) (AKT), 2015 WL 2344134, at *10 (E.D.N.Y. May 14, 2015) ("[W]hether the phrase 'DNA Advantage' is misleading to a reasonable customer in light of the Products' actual effects" is a question the "Court is well-equipped to answer[.]"); *In re Frito-Lay North America, Inc. All Natural Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013) (" 'This case [involving an 'All Natural' label] is far less about science than it is about whether a label is misleading,' and the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed." (quoting *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012))); *Dapeer v. Neutrogena*, 95 F. Supp. 3d 1366, 1376 (S.D. Fla. 2015) (finding primary jurisdiction "inappropriate" because plaintiff's claims that sunscreen did not provide the marketed water resistance and sun protection "rest on a determination of whether Neutrogena's marketing of its high SPF products is false and misleading").

In assessing whether a label is misleading, the court need not apply the primary jurisdiction doctrine, even where the label pertains to a scientific or technical term or claim, such as an SPF rating.[8] *See Dapeer*, 95 F. Supp. 3d at 1376; *Keskinen*

---

[8] In support of their argument that primary jurisdiction is appropriate because of the technical and scientific regulations regarding SPF ratings, defendants cite numerous non-binding cases, which, for the most part are

*v. Edgewell Personal Care Co. et al.*, No. 17-cv-7721 (PJWx), slip op. at 6 (C.D. Cal. Apr. 17, 2018) (declining to invoke primary jurisdiction in action concerning accuracy of SPF rating advertised); *Manuel et al. v. Pepsi-Cola Co.*, No. 17-cv-7955 (PAE), 2018 WL 2269247, at *6 (S.D.N.Y. May 17, 2018) (declining to invoke primary jurisdiction in action involving nutritional impact of artificial sweeteners); *Yeldo v. MusclePharm Corp.*, 290 F. Supp. 3d 702, 705, 714-715 (E.D. Mich. 2017) (declining to invoke primary jurisdiction in action concerning dietary supplement's health and medical claims that plaintiff argued were refuted by scientific studies). Furthermore, the primary jurisdiction doctrine need not be applied even if evaluating a misrepresentation claim may require the court to assess the application of technical regulations. *See Dapeer*, 95 F. Supp. 3d at 1376; *Keskinen*, No. 17-cv-7721 (PJWx), slip op. at 6; *Gubala*, 2016 WL 1019794, at *16 (denying primary jurisdiction in

---

distinguishable because, unlike here, in the cited cases: (1) the plaintiffs requested the court perform an action whose execution was specifically delegated to the FDA, *In re Human Tissue Prod. Liab. Litig.*, 488 F. Supp. 2d 430, 432-33 (D.N.J. 2007) (involving request for notice and recall); *Clark v. Actavis Grp. hf*, 567 F. Supp. 2d 711, 717 (D.N.J. 2008) (same); *Lemmon Pharmacal Co. v. Richardson*, 319 F. Supp. 375, 377 (E.D. Pa. 1970) (involving request that drug be declared safe and effective for prescribed use); (2) the regulations were ambiguous and needed FDA clarification, *Taradejna v. Gen. Mills., Inc.*, 909 F. Supp. 2d 1128, 1134 (D. Minn. 2012) (finding relevant regulation was "not the model of clarity," the FDA was in the "best position to resolve any ambiguity," and the FDA had recently issued a proposed rule on the relevant issue); and (3) all factors weighed in favor of primary jurisdiction and multiple types of agency expertise were involved in assessing the claims, *Physicians Comm. For Responsible Med. v. Gen. Mills., Inc.*, No. 05-cv-958 (LMB), 2006 WL 3487651, at *6 (E.D. Va. Nov. 30, 2006) (finding all factors weighing in favor of primary jurisdiction and agency had relevant economic and scientific expertise).

action involving, *inter alia*, claims of false statements
involving total protein content, protein daily value percentage,
and ingredients for a protein powder supplement).

        In support of defendants' argument that this first
factor supports invoking primary jurisdiction, defendants rely
primarily on *Herazo v. Whole Foods Mkt., Inc.*, No. 14-cv-61909
(FAM), 2015 WL 4514510 (S.D. Fla. July 24, 2015), which is not
binding on the court.  In *Herazo*, the court found that primary
jurisdiction was appropriate where plaintiffs alleged that
certain homeopathic products did not deliver their marketed
promises and cited to the "extensive regulatory scheme to
oversee homeopathic drug marketing and the questions presented
over the labels," specifically the "Indications of Use" label.
*Id*. at *5.  The *Herazo* court also favorably cited a Third
Circuit case, which held that the issue of whether an ingredient
is properly labeled as "active" or "inactive" under the FDA
regulations was not proper for a court to decide.  *Id.* (citing
*Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d
222, 232 (3d Cir. 1990)).

        *Herazo* is distinguishable.  First, the statutes and
regulations governing the "Indications for Use" labeling for
homeopathic drugs are more extensive than those governing
sunscreen SPF ratings.  Homeopathic drug regulations require the
products to include, *inter alia*, "Indications for Use" or

16

"Directions for Use," formatting and content requirements for labels, conditions under which the drugs may be marketed, and a "Statement of Identity" that provides "an accurate statement of the general pharmacological category(ies) of the drug or the principal intended actions of the drug . . . ." *See* 21 C.F.R. § 201.61(b), (c)(4); Compliance Policy Guide § 400.400.  Because homeopathic medicines are considered "drugs" by the Federal Food, Drug and Cosmetic Act (the "FDCA"), they are also subject to the FDCA's rules and regulations regarding the advertising, labeling, and branding of drugs.  *See, e.g.*, 21 U.S.C. §§ 301, 321(g)(1), 321(n), 331, 352, 379r; *see also Herazo*, 2015 WL 4514510, at *4.  The regulations governing SPF ratings, on the other hand, though extensive in their own right, amount to a set of protocols or tests that a manufacturer performs to determine what numerical SPF rating a sunscreen should receive and, where relevant, the level of water resistance the sunscreen provides, as well as how that information, among other related information, may be displayed.  *See* 21 C.F.R. § 201.327.

Relatedly, in *Herazo*, the plaintiffs asked the court to determine the less straightforward question of whether certain drugs' labels accurately indicated the uses and benefits of those drugs as opposed to the clear-cut question at issue here of whether defendants labeled the Products as scoring an

17

SPF 50 on an FDA prescribed test when in fact they did not

receive such a score.

        To the extent defendants argue that SPF testing itself

is so technical, complicated, and/or scientific that that only

the FDA can resolve plaintiff's claims of inaccuracy, the court

is unconvinced.[9]  (*See* ECF No. 37, Def. Mem. at 10 ("[M]aking the

specialized determinations necessary to decide whether [the

Products] . . . meet their SPF claims is . . . uniquely within

the province of the FDA.").)  The court humbly recognizes that

it is presumably less well-equipped than the FDA to determine as

a matter of science whether the Products satisfy the

requirements necessary to be labeled as SPF 50.  *See Canale v.*

*Colgate-Palmolive, Co.*, No. 16-cv-3308 (CS), 2017 WL 2729493, at

*9 (S.D.N.Y. June 23, 2017) (finding first primary jurisdiction

factor neutral and acknowledging the court is less well-equipped

to scientifically determine the validity and accuracy of a

toothpaste's whitening claims).  Nonetheless, as the court in

*Keskinen* points out, the FDA's involvement with SPF ratings

---

[9] In support of their argument that the FDA is best positioned to determine
compliance with its own regulations, defendants cite *Stevens v. Boston*
*Scientific Corp.*, 152 F. Supp. 3d 527, 537 (S.D. W. Va. 2016).  (ECF No. 37,
Def. Mem. at 10.)  *Stevens* is distinguishable, however, because in that case
the FDA not only exercised its "expertise and impressive administrative
dominance" over the relevant "statutes, regulations, and directives," but
also "was the very agency that cleared [the defendant's] mesh device[, the
product as issue in the litigation,] in the first place."  *Stevens*, 152 F.
Supp. 3d at 537.  As discussed herein, the FDA is not required to, nor is
there any indication that it did, approve the SPF ratings for the Products at
issue here.

labels ends with the regulations.  No. 17-cv-7721 (PJWx), slip op. at 6.  Manufacturers, not the FDA, perform FDA prescribed tests that determine the applicable and final SPF rating and label for a product, and they "are not required to obtain pre-marketing review or approval of their labels from the FDA" so long as they conduct their tests pursuant to FDA regulations.[10] *Id.* (citing 21 C.F.R. § 201.327(i), (j) and U.S. Dept. of Health and Human Servs., FDA, "Labeling and Effectiveness Testing: Sunscreen Drug Products for Over-The-Counter Human Use – Small Entity Compliance Guide" (Dec. 2012)).

Plaintiffs' claim that defendants' incorrectly labeled the Products with SPF 50 instead of a lower number is primarily a legal issue of alleged misrepresentation, based on results of FDA-regulated testing rather than technical expertise. Accordingly, the first factor weighs slightly against invoking the doctrine of primary jurisdiction.

B.  Agency Discretion

The FDA has broad statuary power to regulate sunscreen products, including SPF testing protocols and labeling.  *See generally* 21 C.F.R. § 201.327.  Thus, the second *Ellis* factor

---

[10] Defendants acknowledge that manufacturers, not the FDA, are responsible for testing and determining SPF ratings for their products.  (ECF No. 37, Def. Mem. at 14 ("[T]he FDA issued the Final Rule, which mandates the precise technical and scientific protocols manufacturers must follow to test a sunscreen product's SPF, and dictates how the SPF must be displayed on the product label.").)

weighs in favor of a dismissal or stay, based on primary jurisdiction. *See, e.g.*, *de Lacour v. Colgate-Palmolive Co.*, No. 16-cv-8364 (RA), 2017 WL 6550690, at *3 (S.D.N.Y. Dec. 22, 2017) (finding second factor weighed in favor of primary jurisdiction where FDA had authority to determine what products could be labeled "natural").

## C.   Risk of Inconsistent Rulings

Defendants identify two potential sources of a risk of inconsistent rulings.  In the context of primary jurisdiction, the threat of inconsistent rulings may emerge when the issue before a court is simultaneously pending before an agency with authority over that same issue.  *Ellis*, 443 F.3d at 88.  The court finds that defendants have failed to present evidence that the products at issue are pending before the FDA, and thus have failed to identify a sufficient risk of inconsistent rulings by the court and the FDA such that primary jurisdiction is warranted.

   *1. The FDA's "Request for Quote"*

Defendants identify a Request for Quote issued by the FDA titled, "Determination of sun protection factor (SPF) in vivo using 21 CFR 201.327" (the "FDA RFQ"), which they claim creates a danger of inconsistent rulings.  (ECF No. 36, Declaration of Michael J. Reiss in Support of Defendants' Motion to Dismiss or Stay Plaintiffs' SACC ("Reiss Decl.") at 3; ECF

No. 36-8, Reiss Decl., Ex. H ("FDA RFQ") at 1; ECF No. 37, Def.
Mem. at 30-31.)  The FDA RFQ does not involve the FDA itself
testing or determining the SPF rating of products.  Rather, the
FDA RFQ is a "solicitation" with the objective "to obtain
services for determining [SPF] in vivo of 20 U.S. marketed
products," specifically "four SPF 15 products, four SPF 30
products, eight SPF 50 products, and four SPF 70 products,"
"using the procedure in 21 C.F.R. § 201.327." (ECF No. 36-8,
FDA RFQ at 3.)  The request "does not include determination of
water resistance." (*Id.*)  The "FDA will supply the 20 different
U.S. marketed products to be tested at the contract clinical
site," and the contractor will perform the testing using
protocol consistent with 21 C.F.R. § 201.327 and approved by the
FDA.[11]  (*Id.*)  "All quotes and revisions" were required to be
submitted to the FDA "no later than August 11, 2016." (*Id.*)  To
date, it appears that no action has been taken pursuant to the
FDA RFQ. [12]

    The FDA RFQ does not present a danger of inconsistent
rulings because there is no indication in the language of the

---

[11] The fact that the FDA RFQ would involve a non-FDA contractor to perform SPF
testing further undercuts defendants' claim, discussed *supra*, that the FDA is
uniquely able to determine whether a sunscreen product contains its
advertised SPF rating.

[12] At oral argument on January 10, 2018, the parties represented that they had
no knowledge of the FDA taking action pursuant to the FDA RFQ.  (ECF No. 59,
Oral Arg. Tr. at 9.)  The parties were ordered to update the court with any
information regarding FDA action on matters related to this action, and they
have not provided any updates suggesting further action has been taken with
respect to the FDA RFQ.

FDA RFQ that it will result in a ruling. Moreover, even if the FDA RFQ does culminate in a ruling, there is no indication that it would resolve the issue of whether defendants labeled the Products with the incorrect SPF. *Cf. Ellis*, 443 F.3d at 87-88 (finding risk of inconsistent ruling where plaintiff claimed defendant was violating agency order while defendant's application for waiver, which, if granted, would cure the alleged violation, was pending before the agency); *Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*, 618 F. Supp. 2d 256, 270 (E.D.N.Y. 2009) (finding risk of inconsistent ruling where questions implicating plaintiffs' claims were submitted to the agency at the beginning of litigation); *Gisvold v. Merck & Co., Inc.*, 62 F. Supp. 3d 1198, 1204 (S.D. Cal. 2014) (finding risk of inconsistent rulings where proposed rule seeking comment and submission of data on the same issue presented by plaintiff was pending before FDA for over three years).

It is not clear from the FDA RFQ that defendants' products would even be eligible for consideration in the testing, and, if they are eligible, there is no indication that the Products would be selected. The FDA RFQ states that the contract for testing SPF "does not include determination of water resistance." (ECF No. 36-8, FDA RFQ at 2.) From this language, it is not clear whether sunscreens, like the Products,

22

which are labeled "water resistant" would be excluded from the FDA RFQ altogether or if their water resistance claims simply would not be evaluated.  From the relevant regulations, however, it appears that the process for determining SPF is tethered to the sunscreen's water resistance claims, suggesting that the Products would not be within the scope of the FDA RFQ.  *See* 21 C.F.R. § 201.327(i)(7).  Nonetheless, if products labeled "water resistant" are deemed within the scope of the FDA RFQ, nothing in the FDA RFQ suggests that the Products would be selected.[13]

Defendants unpersuasively argue that the timing of the FDA RFQ, which was issued two weeks after a *Consumer Reports* article was published that mentioned SPF results for Banana Boat products, suggests that the Products would be included in the FDA RFQ.  (*See* ECF No. 37, Def. Mem. at 30-31.)  Given that the FDA RFQ does not refer to the *Consumer Reports* article, the court cannot find that the temporal proximity of the FDA RFQ and the article indicates that the FDA RFQ would be more likely to include the Products than other sunscreens.  (*See generally* ECF No. 36-8, FDA RFQ.)  Accordingly, this factor weighs against applying the primary jurisdiction doctrine.

---

[13] Defendants admitted to not knowing whether the FDA would consider the Products as part of the RFQ when defense counsel stated, "I don't think it's a giant leap to think that it is possible that one of the eight SPF 50 products [addressed in the FDA RFQ] would be [one of the Products].  I don't know that it is, I don't know that it isn't."  (ECF No. 59, Oral Arg. Tr. at 34.)

## 2. *FDA Statement*

Defendants recently provided the court with an FDA statement, dated May 22, 2018, and entitled, "Statement from FDA Commissioner Scott Gottlieb, MD, on new FDA action to keep consumers safe from the harmful effects of sun exposure, and ensure the long-term safety and benefits of sunscreens" (the "FDA Statement").[14] (ECF No. 62-1, FDA Statement.) The FDA Statement "announc[ed] three new efforts as part of a comprehensive set of actions to advance the FDA's framework for sun protection products . . . ." (*Id.* at 3.) According to the FDA Statement, those efforts include: (1) sending "warning letters to companies illegally marketing pills and capsules labeled as dietary supplements that make unproven drug claims" regarding sun protection; (2) "encouraging industry to conduct research on additional sunscreen active ingredients" to help the FDA answer safety questions; and (3) issuing guidance for the industry describing its enforcement approach with respect to sunscreen products (the "Guidance for Industry") (*see* ECF No. 62-2, Guidance for Industry). (ECF No. 62-1, FDA Statement at 3-4.) Additionally, the FDA Statement notes that the FDA

---

[14] Plaintiffs responded to defendants' submission with a letter noting that they share the FDA's goal "to make sure that sunscreen manufacturers deliver to consumers the SPF value that they promise, and to hold them accountable and responsible if they do not." (ECF No. 63, Plaintiffs' June 5, 2018 Letter at 2.) However, plaintiffs argue that the FDA Statement and the Guidance for Industry do not affect the court's analysis with respect to primary jurisdiction. (*Id.*) The court agrees.

"expect[s] to address sunscreen dosage forms and the effectiveness of various SPF values." (*Id.* at 5.)

Nothing in the FDA Statement or the Guidance for Industry indicates that the FDA will, or is even contemplating, issuing a ruling on the issue at hand in this action – namely, whether defendants improperly labeled the Products with an SPF 50 rating.

D.  Prior Application to the FDA

Neither party has made a prior application to the FDA regarding this issue.  Contrary to defendants' arguments (ECF No. 37, Def. Mem. at 31-32), the FDA RFQ is not an adequate substitute for a prior application to the FDA.  Accordingly, this factor weighs against application of the doctrine of primary jurisdiction.

Because three of the four factors weigh against primary jurisdiction, defendants' motion to dismiss or stay on the basis of primary jurisdiction is denied.

II.  **Motion to Dismiss Counts II, III, VII, and XI**

A.  Count II: Breach of Implied Contract through Violation of the Implied Covenant of Good Faith and Fair Dealing

In Count II of the SACC, plaintiffs allege the existence of an implied-in-law contract between plaintiffs and defendants regarding plaintiffs' purchases of Banana Boat Kids

SPF 50 sunscreen lotion.[15]   (ECF No. 31, SACC ¶¶ 104 ("By
operation of law, there existed an implied contract for the sale
of Banana Boat Kids SPF 50 sunscreen lotion between Defendants
and each Plaintiff and class member who purchased the
product."), 105 ("By operation of law, there existed an implied
duty of good faith and fair dealing in each such contract.").)
Defendants argue Count II should be dismissed with prejudice as
to all seven actions because there is no implied covenant
without a contract, and an implied-in-law contract is not a
contract.   (ECF No. 37, Def. Mem. at 32-33.)

     Indeed, under all relevant state law, contracts
implied-in-law are not true contracts.  *Clark-Fitzpatrick, Inc.
v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *Wanaque
Borough Sewerage Authority v. Township of West Milford*, 677 A.2d
747, 752 (N.J. 1996); *Arcade County Water Dist. v. Arcade Fire
Dist.*, 6 Cal. App. 3d 232, 236 (Cal. Ct. App. 1970); *Midcoast
Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 743
(7th Cir. 1990) (applying Illinois state law); *Merle Wood &
Associates, Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294,
1305-06 (S.D. Fla. 2012) (applying Florida state law); *see also*

---

[15] Plaintiffs' attempt to characterize the contracts as "contracts-in-fact" in
their opposition brief (ECF No. 39, Pl. Mem. at 12-16) is unavailing given
plaintiffs' characterization in the SACC of the contracts as "implied" and
"by operation of law" (*see* ECF No. 31, SACC ¶ 104).  *See O'Brien v. Nat'l
Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("It is
axiomatic that the Complaint cannot be amended by the briefs in opposition to
a motion to dismiss.").

26 Williston on Contracts § 68:1 (4th ed.) ("A contract implied in law, or quasi-contract, is not a contract at all.").

Further, in the absence of a contract, there is no implied covenant of good faith and fair dealing.[16] *See Sellitto v. Litton Systems, Inc.*, 881 F. Supp. 932, 940 (D.N.J. 1994) (applying New Jersey state law); *PPM Finance, Inc. v. Norandal USA, Inc.*, 297 F. Supp. 2d 1072, 1095 (N.D. Ill. 2004) (applying Illinois state law and explaining that the implied covenant of good faith "simply guides the construction of explicit terms in" a contract); *Degutis v. Financial Freedom*, 978 F. Supp. 2d 1243, 1263 (M.D. Fla. 2013) (applying Florida state law); *Keefe v. New York Law School*, 897 N.Y.S.2d 94, 95 (N.Y. App. Div. 2010); *Thrifty Payless, Inc. v. Americana at Brand, LLC*, 160 Cal. Rptr. 3d 718, 729-30 (Cal. Ct. App. 2013) (explaining that the implied covenant of good faith and fair dealing is a "*supplement* to the express contractual covenants" (emphasis in original)). Accordingly, the court dismisses Count II of the SACC with prejudice.

---

[16] At oral argument, plaintiffs admitted as much when, in the context of discussing whether plaintiffs pleaded a contract or an implied-in-law contract, plaintiffs' counsel stated, "If we have a breach of contract then there's not a breach of implied contract. The covenant of good faith and fair dealing is borne out of contract cases." (ECF No. 59, Oral Arg. Tr. at 24.)

B.  Count III: Declaratory and Injunctive Relief

        Defendants contend that declaratory and injunctive
relief are not independent causes of action and therefore Count
III must be dismissed with prejudice.  In their opposition
brief, plaintiffs concede that "some district courts hold that a
litigant cannot plead a free-standing count for injunctive
relief" and they do not address defendants' contention that
declaratory relief is not a free-standing claim.  (ECF No. 39,
Pl. Mem. at 27.)  Indeed, "[d]eclaratory judgments and
injunctions are remedies, not causes of action." *Chiste v.
Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010);
*accord Cangemi v. United States*, 939 F. Supp. 2d 188, 196
(E.D.N.Y. 2013) ("[I]njunctive and declaratory relief are not
separate causes of action."); *see also In re Joint Eastern and
Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)
("[A] request for relief in the form of a declaratory judgment
does not by itself establish a case or controversy involving an
adjudication of rights.").  Accordingly, defendants' motion to
dismiss Count III with prejudice is granted.

C.  Count VII: New Jersey Consumer Fraud Act, N.J.S.A. §§
    56:8-1, *et seq.*

        To state a claim under the New Jersey Consumer Fraud
Act ("NJ CFA"), a plaintiff must allege that the defendant
engaged in an unlawful practice that caused an ascertainable

loss to the plaintiff. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17, 22 (N.J. 1994). Neither the NJ CFA nor its legislative history clearly articulates the exact meaning of "ascertainable loss." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005) (citing *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 440-41 (N.J. 2004)). Ascertainable loss has nonetheless been described as "a cognizable and calculable claim of loss due to the alleged [NJ] CFA violation." *Solo v. Bed Bath & Beyond, Inc.*, No. 06-cv-1908 (SRC), 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (citing *Thiedemann*, 872 A.2d at 793). To demonstrate ascertainable loss, a plaintiff must establish "actual loss" that is "quantifiable or otherwise measurable," or "real and demonstrable," as opposed to "hypothetical or illusory" or "speculative." *Theidemann*, 872 A.2d at 793, 795, 796.

Defendants argue that plaintiffs failed to adequately allege ascertainable loss with respect to plaintiffs D'Aversa and Fernandez under the NJ CFA because they did not provide an assessment or basis for an assessment of economic loss. (ECF No. 37, Def. Mem. at 34-35.) Plaintiffs contend that they are not required to plead a specific amount of ascertainable loss and, moreover, that they satisfied the ascertainable loss requirement by using the "out-of-pocket" and "benefit-of-the-bargain" methods. (ECF No. 39, Pl. Mem. at 23-25.) For the

29

following reasons, the court dismisses Count VII with respect to plaintiff Fernandez but not with respect to plaintiff D'Aversa.

1. *Out-of-Pocket Ascertainable Loss*

The "out-of-pocket" method for alleging ascertainable loss requires the plaintiff to have spent, and not been refunded, money. *See Lee v. Carter-Reed*, 4 A.3d. 561, 580 (N.J. 2010); *Thiedemann*, 872 A.2d at 794; *Dicuio v. Brother Int'l Corp.*, No. 11-cv-447 (FLW), 2012 WL 3278917, at *7 (D.N.J. 2012). The out-of-pocket method does not require a party to identify a specific amount of money lost at the pleadings stage. *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 898-99 (N.J. Sup. 2001) ("[O]ne has suffered an ascertainable loss . . . where that loss is measurable—even though the precise amount is not known. . . . [I]n order to survive a motion to dismiss[,] a plaintiff under the [NJ CFA] need only supply an estimate of damages calculated with a reasonable degree of certainty."); *see also Thiedemann*, 872 A.2d at 792-93 (noting ascertainable loss "must be presented with some certainty demonstrating that it is capable of calculation, although it need not be demonstrated in all its particularity to avoid summary judgment"). A plaintiff must nonetheless provide sufficient facts, such as the plaintiff's personal experiences with the product, for the court to determine what loss, if any, the plaintiff sustained. *See Dicuio*, 2012 WL 3278917, at *7 (finding out-of-pocket

ascertainable loss sufficiently alleged even though plaintiffs did not include a specific amount of money because they alleged having to purchase replacement printer cartridges due to defendants' misrepresentations).

Because the SACC alleges that plaintiff D'Aversa paid $6.35 for an 8-ounce tube of Banana Boat Kids SPF 50 sunscreen lotion (ECF No. 31, SACC ¶ 18), plaintiffs sufficiently pleaded ascertainable loss with respect to that plaintiff. *See Lee*, 4 A.3d. at 580.

With respect to plaintiff Fernandez, plaintiffs fail to establish ascertainable loss through the out-of-pocket method.  They do not provide sufficient specificity regarding what products she purchased, how much she paid for the products, the quality of the products, or what her personal experiences were with the products. *See Solo*, 2007 WL 1237825, at *3 (finding plaintiff insufficiently pleaded out-of-pocket ascertainable loss by generally alleging that plaintiff and putative class members purchased defendant's allegedly misrepresented bed linens without including price paid); *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015) (finding plaintiffs failed to sufficiently plead out-of-pocket ascertainable loss when they did not state which products they purchased, how much they paid for the products, or that the products were "worthless" and instead only alleged they

31

would not have purchased, paid as much for, or would have purchased alternative products in the absence of defendants' alleged misrepresentation); *Hughes v. Panasonic Consumer Electronics Co.*, No. 10-cv-846 (SDW), 2011 WL 2976839, at *16 (D.N.J. July 21, 2011) (finding allegations of deterioration in television quality insufficient to establish out-of-pocket ascertainable loss when plaintiffs did not specify when they began to notice the deterioration).

### 2. *Benefit-of-the Bargain Ascertainable Loss*

The "benefit-of-the-bargain" method for determining ascertainable loss applies when the consumer "is misled into buying a product that is ultimately worth less than the product that was promised." *Mladenov*, 124 F. Supp. 3d at 375; *see also Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.*, No. A-5205-05T3, 2008 WL 649024, at *17 (N.J. Super. Ct. App. Div. Mar. 12, 2008) ("[I]n cases involving the purchase of goods or services, an ascertainable loss is established where the plaintiff receives something less than, and different from, what he or she reasonably expected to receive." (citations and internal quotation marks omitted)). To present a benefit-of-the-bargain claim, a plaintiff must allege: "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified." *Mladenov*,

124 F. Supp. 3d at 376.  "Failure to quantify this difference in value results in the dismissal of the claim."  *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 101 (D.N.J. 2011). Valuations, however, "do not have to be perfect; they need only provide a reasonable basis for valuation that is not speculative or unquantified."  *Id.* at 102-03; *see also Furst*, 860 A.2d at 441-42 (explaining that quantification of ascertainable loss is guided by principles of contract law and therefore may be calculated in a variety of ways).

Defendants only dispute whether the SACC satisfies the second prong of the benefit-of-the-bargain pleading requirement that the difference in value between the product promised and the one received can be reasonably quantified.  With respect to that prong, the court finds that plaintiffs fail to allege a quantifiable difference between the product promised and the one received.  Plaintiffs allege that a lower SPF is less valuable than a higher SPF because it "allow[s] users to remain in the sun without damage for a significantly shorter period."  (ECF No. 31, SACC ¶ 47.)  They do not, however, offer any proof that sunscreens with SPFs comparable to that which plaintiffs allege they received, cost less money than SPF 50 sunscreen.  Moreover, plaintiffs do not allege how much the Products cost plaintiff

Fernandez[17], nor any other particulars that would explain why the product plaintiff received was of lesser value than what was promised. *See Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 301 (D.N.J. 2009) (finding plaintiffs insufficiently pleaded benefit-of-the-bargain ascertainable loss where they "fail[ed] to allege . . . any particulars as to their own experiences with the [products]"); *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 541-42 (D.N.J. 2011) (finding no ascertainable loss where plaintiff alleged products comparable to the product received "cost at least twenty-five (25%) less" than what plaintiff paid, but plaintiff did not allege the price paid for the product or the identity or cost of allegedly comparable products).  The alleged difference in SPF rating between what plaintiffs were promised and what they received, and nothing more, is insufficient to establish ascertainable loss.  *See Solo*, 2007 WL 1237825, at *3 (finding no ascertainable loss under benefit-of-the-bargain method and characterizing as insufficiently "broad and conclusory" plaintiff's allegations that his purchase of sheet set advertised as having a "1000 Thread Count" that was actually "492 Thread Count" constituted a purchase of lower quality and

---

[17] Because the court finds that plaintiffs sufficiently pleaded out-of-pocket ascertainable loss with respect to plaintiff D'Aversa, the court does not address whether plaintiffs also pleaded benefit-of-the-bargain ascertainable loss with respect to that plaintiff as well.

less value).  As such, plaintiff Fernandez's claims concerning ascertainable loss under the benefit-of-the-bargain method are "nothing more than unsupported conclusory claims that are insufficient to withstand a motion to dismiss." *Lieberson*, 865 F. Supp. 2d at 541-42.

For the foregoing reasons, Count VII is dismissed with respect to plaintiff Fernandez, but not with respect to plaintiff D'Aversa.

D.   Count XI: Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS §§ 505/1, *et seq.*

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), a plaintiff must show: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citation omitted).

When the plaintiff is a private party, like plaintiffs in this matter, an action brought under the ICFA requires the plaintiff plead and then show she suffered "actual damage" as a result of the defendant's violation of the ICFA.  815 I.L.C.S. § 505/10a; *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1196 (Ill. App. Ct. 2008).  To adequately plead actual damage, a "plaintiff must

35

allege that []he has been harmed in a concrete, ascertainable way." *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008). A plaintiff may satisfy this pleading requirement by alleging that he would not have purchased the item or paid the purchase price for the item had the deceptive practice not been employed. *Compare Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911–12 (N.D. Ill. 2011) (holding plaintiffs adequately pleaded actual damage because they alleged "they would not have purchased the Video Monitors, or paid the purchase price for the Video Monitors, had [the correct] information been provided on the Video Monitors' packaging or in its advertising," and finding the price paid for the Video Monitors constituted actual damage), *with Frye,* 583 F. Supp. 2d at 957 (holding plaintiff did not adequately plead actual damage because she did not allege "that she would not have purchased lipstick, that she would have purchased cheaper lipstick, or that the lipstick in question had a diminished value because of the lead"). A plaintiff may also plead actual damage by alleging loss of money through other means. *See, e.g.*, *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 527 (N.D. Ill. 2011) (finding plaintiffs sufficiently pleaded actual damage because they alleged that "they lost money from unauthorized withdrawals and/or bank fees").

Defendants argue that plaintiffs failed to adequately plead actual damage, but they do not challenge the sufficiency of plaintiffs' pleadings with respect to the other ICFA elements. (*See* ECF No. 37, Def. Mem. at 35.)  Plaintiffs allege that the Illinois plaintiff, Nabong, "would not have purchased the product or would not have paid as much for the product" had he known it did not contain SPF 50. (ECF No. 39, Pl. Mem. at 27 (citing ECF No. 31, SACC ¶ 58).)  Plaintiffs also allege the price plaintiff Nabong paid for the sunscreen, which was $2.00. (*Id.* ¶ 17.)  Defendants contend that these allegations are insufficient to plead actual damage because they do not include "specifics about the alleged diminution of value." (*Id.*)  As discussed above, however, a plaintiff pleading under ICFA is not required to establish actual damage through diminution of value. Because plaintiffs allege the price that Nabong paid for the allegedly deceptively labeled sunscreen and that he would not have paid that price had he known the SPF rating was inaccurate, they adequately pleaded actual damages under the ICFA.  *See Jamison*, 778 F. Supp. 2d at 912.  Accordingly, defendants' motion to dismiss Count XI is denied.

## III.   <u>Motion to Strike Requests for Injunctive and Declaratory Relief</u>

Defendants further argue that the court should strike plaintiffs' requests for injunctive and declaratory relief, as

articulated in plaintiffs' Request for Relief. (ECF No. 31,
SACC at 35.) They argue that plaintiffs lack standing to
request injunctive relief and that the request for declaratory
relief is duplicative of plaintiffs' other counts. Because the
court's dismissal of Count III (claims for declaratory and
injunctive relief) does not automatically dispose of plaintiffs'
requests for injunctive and declaratory relief, defendants'
motions to strike those requests are addressed in turn. *See*
*Leonard v. Abbot Laboratories, Inc.*, No. 10-CV-4676 (ADS) (WDW),
2012 WL 764199, at *28 (E.D.N.Y. Mar. 5, 2012) (dismissing claim
for injunctive relief but permitting plaintiffs to seek
injunctive relief in their Prayer for Relief); *Chiste*, 756 F.
Supp. 2d at 407 (dismissing independent claims for injunctive
and declaratory judgment but "deem[ing] [them] added to
[plaintiff's] ad damnum clause").

A.    Request for Injunctive Relief

        Defendants argue that the court should strike
plaintiffs' request for injunctive relief because plaintiffs
lack standing to seek injunctive relief due to failure to allege
a likelihood of continuing or future injury. (ECF No. 37, Def.
Mem. at 35-36; ECF No. 41, Def. Reply Mem. at 15.) In their
challenge to plaintiffs' request for injunctive relief,
defendants appear to muddle their request to strike and their
Rule 12(b)(1) motion to dismiss for lack of subject matter

jurisdiction: defendants' argument is grounded in plaintiffs'
lack of standing, but they ask the court to strike plaintiffs'
request for injunctive relief pursuant to Rule 12(f). (ECF No.
31, Def. Mem. at 35-36.) Defendants provide no support for
their argument urging the court to strike plaintiffs' request,
as opposed to dismissing it. Nonetheless, because the court has
"an independent obligation to determine whether subject-matter
jurisdiction exists," the court addresses whether plaintiffs
have standing for their request for injunctive relief. *Arbaugh
v. Y&H Corp.*, 546 U.S. 500, 501 (2006); *see also Shain v.
Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (explaining that if a
plaintiff lacks standing to seek injunctive relief, the court
"lack[s] subject matter to entertain a request for such relief"
(citing *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990)). For
the reasons stated below, the court finds that plaintiffs do not
have standing to seek injunctive relief and the court lacks
subject matter jurisdiction to adjudicate plaintiffs' request
for injunctive relief.

Standing for injunctive relief requires, *inter alia*,
that the plaintiff demonstrate an "actual or imminent" injury in
fact, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)
(internal quotation marks omitted), and, when seeking
prospective injunctive relief, the plaintiff must prove the
likelihood of future or continuing harm, *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 111 (1983).  Past injuries "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

Plaintiffs allege three separate bases for standing, none of which is persuasive.  First, plaintiffs allege that had they known the Products contained less protection than advertised, they would not have purchased the sunscreen.  (ECF No. 31, SACC ¶¶ 4, 10.)  This allegation relies on past injury and is insufficient to establish a likelihood of future injury. *See Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (alteration in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))).

Second, plaintiffs allege they "would purchase the product again in the future if they could be assured that the product was accurately labeled as to its SPF rating and/or that the product conformed to the SPF rating on the product packaging" but "are currently prevented from doing so . . . owing to the continuing refusal of Defendants to accurately label the SPF of the product."  (ECF No. 31, SACC ¶ 110.)  "The

Second Circuit has not directly addressed whether plaintiffs alleging claims of false or misleading advertising have standing to seek injunctive relief where the action the plaintiffs seek to enjoin is still ongoing." *Chang v. Fage U.S. Dairy Indus.*, No. 14-cv-3826 (MKB), 2016 WL 5415678, at *4 (E.D.N.Y. Sept. 28, 2016). However, recent Second Circuit decisions and the weight of the authority within this Circuit render plaintiffs' allegations insufficient to establish standing for injunctive relief.

The Second Circuit recently affirmed two decisions dismissing consumers' claims for injunctive relief in which the defendant continued to sell the same or similar products to those at issue in the litigation. In *Nicosia v. Amazon.com, Inc.*, the Second Circuit affirmed the dismissal of a consumer's request for injunctive relief for failing to allege that he intended to buy products from the defendant, Amazon, in the future, let alone the products at issue in that action.[18]  834 F.3d at 239.  Although Amazon had ceased selling the same product, it continued to market other products containing the ingredient that was the subject of the plaintiff's misrepresentation claim. *Id.* at 226.  In *Kommer v. Bayer Consumer Health (Kommer II)*, 710 F. App'x 43 (2d Cir. 2018)

---

[18] Unlike here, *Nicosia* did not involve a consumer protection law.

(summary order), the Second Circuit affirmed the dismissal of a consumer's request for injunctive relief where the defendant continued to sell the product at issue in the litigation and the plaintiff failed to allege that he would purchase it in the future. *Id.* at 43-44. Together, these cases strongly indicate that a plaintiff does not have standing for injunctive relief if she has indicated that she does not intend to purchase the allegedly deceptive product at all or will purchase it only if the plaintiff can be assured that the product's representations are no longer deceptive.

Likewise, courts within the Second Circuit have found that plaintiffs fail to allege future injury, and therefore lack standing for injunctive relief, when they do not allege they would purchase the deceptive product in the future or they allege they would not have purchased the product but for the deceptive practice. *Kommer v. Bayer Consumer Health (Kommer I)*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) (noting weight of authority in Second Circuit requires a plaintiff to show she is likely to repurchase the same product by which she had been deceived in order to establish standing for injunctive relief), *aff'd sub nom. Kommer II*, 710 F. Appx. 43; *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018) ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed

42

again in the same way."); *Tomasino*, 44 F. Supp. 3d at 256
(holding plaintiff did not have standing to seek injunctive
relief because she alleged that she does not believe the
products achieve the advertised effect and that she would not
have bought the products "absent the allegedly misleading
advertisements"); *In re Avon Anti-Aging Skincare Creams &*
*Products Mktg. & Sales Practices Litig.*, No. 13-cv-150 (JPO),
2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) (finding
plaintiff lacked standing for injunctive relief because the
allegation that "if she had been aware of the alleged truth
about Avon's products, she would not have bought class
products," did not establish risk of future harm); *Chang*, 2016
WL 5415678, at *5 (holding plaintiffs failed to adequately
allege future injury because they did "not allege[] that they
will purchase the . . . products in the future" and therefore
did not have standing for injunctive relief); *Albert v. Blue*
*Diamond Growers*, 151 F. Supp. 3d 412, 417 (S.D.N.Y. 2015)
(holding plaintiffs failed to plead future injury because they
did not "allege[] that they will purchase [the products] in the
future"); *Reid v. GMC Skin Care USA Inc.*, No. 8:15-cv-277 (BKS)
(CFH), 2016 WL 403497, at *7 (N.D.N.Y. Jan. 31, 2016) (holding
dismissal of a prospective injunctive relief claim regarding
false and misleading marketing and sale of consumer products "is
required by Supreme Court and Second Circuit precedent").

Similarly, it is insufficient for a plaintiff to allege that she will purchase the product in the future on the condition that she can be assured that it is no longer deceptive. *See Atik v. Welch Foods, Inc.*, No. 15-cv-5405 (MKB) (VS), 2016 WL 5678474, at *6 (E.D.N.Y. Sept. 30, 2016) (adopting report and recommendation finding plaintiffs lack standing for injunctive relief where plaintiffs alleged, *inter alia*, they "would resume purchasing the Products in the future but only if the representations on the Products' labels were 'truthful and non-deceptive' "). Therefore, because plaintiffs fail to allege that they will buy the Products in the future, absent assurances that the Products were no longer deceptively labeled, they fail to establish standing for injunctive relief.

Plaintiffs offer a policy argument that consumers should be able to "obtain a public injunction to stop a seller's ongoing deceptive or fraudulent sales practice," and that an inability to do so would be at odds with state law allowing plaintiffs to obtain public injunctions to protect the public from fraudulent conduct. (ECF No. 39, Pl. Mem. at 28; *see also* ECF No. 59, Oral Arg. Tr. at 42-43.) Although "there may be legitimate policy reasons to relax the standing requirements" for injunctive relief in the consumer protection context, the court finds that here the weight of the authority dictates that plaintiffs do not have standing to seek injunctive relief.

44

*Bernadino v. Barnes & Noble Booksellers, Inc.*, No. 17-cv-4570 (LAK) (KHP), 2017 WL 3727230, at *6 (S.D.N.Y. Aug. 11, 2017), *report and recommendation adopted*, No. 17-cv-4570 (LAK), 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017); *see also Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 566 (S.D.N.Y. 2017) (acknowledging courts have permitted plaintiffs in consumer actions to seek injunctive relief for public policy reasons but denying plaintiff's ability to do so). Moreover, and importantly, the court notes that to the extent seeking injunctive relief is important to plaintiffs to protect other consumers, they may pursue such relief pursuant to consumer protection laws in state court insofar as injunctive relief is available to similarly situated plaintiffs in state court. *See Marino*, 264 F. Supp. 3d at 566 (explaining that those courts which find subject matter jurisdiction for public policy reasons "appear to confuse whether a plaintiff has Article III standing to sue in federal court with whether the purposes of the state law would be furthered by permitting plaintiffs to seek injunctive relief" and noting injunctive relief remains available under state law in state court).

Although the weight of the authority weighs against finding standing for injunctive relief in the instant action, and, therefore, the court finds plaintiffs do not have such standing, the court notes that the issue of proper SPF

45

designation is a serious and important one, especially in products to be used to protect children.  Consumers have the right to demand accurate representations with respect to the degree of protection sunscreen provides from cancerous sun exposure.  Nonetheless, plaintiffs here have failed to demonstrate that they have standing for injunctive relief because in effect they have conceded that they will not purchase the offending products in their allegedly deceptive state. Defendants have the choice between convincing plaintiffs and other consumers that the Products accurately represent their SPF designation or correcting any misrepresentations, and plaintiffs have the choice between purchasing other, presumably accurately advertised, sunscreens and trusting defendants' representations.

For the above-stated reasons, the court finds that plaintiffs do not have standing to seek injunctive relief in federal court, and the court therefore dismisses plaintiffs' request for such relief.

B.   Request for Declaratory Relief

Defendants argue that plaintiffs' requests for declarations that (1) the Products display "false and misleading information;" and that (2) defendants "knew or should have known of the false information" are "duplicative of the allegations that serve as the basis for Plaintiffs' claims."  (ECF No. 37, Def. Mem. at 37 (citing ECF No. 31, SACC ¶¶ 111(a), (b)).)  In

their response to defendants' motion to dismiss, plaintiffs include a subheading, which states, "Courts have upheld a plaintiff's ability to seek injunctive and declaratory relief even if they dismiss a free-standing count for such relief." (ECF No. 39, Pl. Mem. at 27.)  Plaintiffs also explain that they are seeking declaratory relief under "various state statutory causes of action which provide for such relief" and argue that, even if the court strikes the independent claim for declaratory relief, the court should not prohibit plaintiffs from seeking such relief on their other claims.  (*Id.*)  In their reply, defendants contend that plaintiffs' response fails to oppose defendants' arguments and therefore should be stricken.  (ECF No. 41, Def. Reply Mem. at 15.)

    As an initial matter, although district courts have the discretion to "deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed," the court declines to exercise its discretion to do so here. *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004).  Plaintiffs' opposition to defendants' motions to dismiss and strike Count III requesting declaratory relief and Request for Relief (d) for such relief, though not particularly robust, cannot be characterized as abandonment because plaintiffs do not fail to respond entirely to defendants' arguments.  *Cf. Williams v. Suffolk Cnty.*, 284 F.

47

Supp. 3d 275, 284 (E.D.N.Y. 2018) (finding plaintiff abandoned

his malicious prosecution claim by not responding "in any way"

to defendants' arguments concerning that claim); *Diba Family*

*Ltd. Partnership v. Ross*, No. 13-cv-06384 (LGS), 2014 WL

5438068, at *3 (S.D.N.Y. 2014) (deeming plaintiffs' prima facie

tort claim abandoned where plaintiffs "[did] not address their

prima facie tort claim at all").

        Having decided that plaintiffs have not abandoned

their request for declaratory relief, the court addresses

whether that request should be stricken as duplicative of

plaintiffs' other claims.  Defendants are correct, and

plaintiffs do not deny, that plaintiffs' request for declaratory

relief is, in part, duplicative of the allegations that serve as

the basis for some of plaintiffs' claims.  (*Compare* ECF No. 31,

SACC ¶¶ 111(a), (b), *with id.* ¶¶ 94, 98, 121, 171.) Nonetheless,

defendants fail to demonstrate that the request for declaratory

judgment has no relation to this action or would prejudice the

defendants if it remains in the SACC.  *See Lynch*, 278 F.R.D. at

63 (describing Rule 12(f) standard).  Accordingly, the court

denies defendants' motion to strike plaintiffs' request for

declaratory relief.  *See Laverpool*, 760 F. Supp. at 1061 ("While

the defendants are correct insofar as the Amended Complaint

'repeats and realleges the same things over and over,' they have

not demonstrated that the allegations sought to be stricken have

no relation to the controversy or that prejudice would result to them if the allegations remain in the pleading." (citation omitted)).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or stay this action is DENIED in part and GRANTED in part.  Defendants' motions to dismiss or stay on the basis of primary jurisdiction and to dismiss Count VII with respect to plaintiff D'Aversa and Count XI are DENIED.  Defendants' motion to strike plaintiffs' Request for Relief (d), which contains requests for injunctive and declaratory relief, is DENIED; nonetheless, the court dismisses plaintiffs' request for injunctive relief.  Defendants' motions to dismiss with prejudice Counts II and III and to dismiss Count VII with respect to plaintiff Fernandez are GRANTED.  The court directs the parties to file a joint letter with the court within seven days of this Memorandum and Order stating how they intend to proceed.

**SO ORDERED.**

Dated:    September 4, 2018
          Brooklyn, New York

                                    _____ _/s/_____
                                    **Hon. Kiyo A. Matsumoto**
                                    United States District Judge