## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE EDGEWELL PERSONAL CARE CO. LITIGATION | Master File No. 16 Civ. 3371 (KAM)(RLM) |

## PLAINTIFFS' THIRD AMENDED CONSOLIDATED COMPLAINT

Plaintiffs Paul Lambrakis, Mark Nabong, Dyan D'Aversa, Laurel Birmingham, Christina Newland, Ingrid Anglin, Felipe Romero, and Tracy Fernandez (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated who purchased Banana Boat Kids SPF 50 sunscreen lotion against Defendants Edgewell Personal Care Company, Edgewell Personal Care, LLC, Edgewell Personal Care Brands, LLC, Playtex Products, LLC, and Sun Pharmaceuticals, LLC (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      Consumers, like Plaintiffs and the putative classes, buy sunscreen to prevent sunburns and other harmful health effects caused by exposure to UV radiation. Sunscreen prevents burning and decreases skin's exposure to UV radiation by absorbing UV radiation on the skin or by reflecting or scattering part or all of the UV radiation away from the skin.

2.      Sun Protection Factor ("SPF") informs the consumer of the level of sunburn protection provided by the sunscreen.  A sunscreen with a higher SPF, such as SPF 50, would filter out more UV radiation and provide more protection as compared to a sunscreen with a lower SPF.

3.      Plaintiffs are some of the hundreds of thousands of consumers who have purchased Banana Boat Kids SPF 50 sunscreen lotion based upon the advertised SPF number.  Consumers, like Plaintiffs, reasonably expect that a bottle labeled "SPF 50" will contain "SPF 50," and not a significantly lower amount of protection.

4.      Plaintiffs bring this putative class action seeking damages sustained as a direct and proximate result of Defendants' violations of various state laws as outlined in greater detail herein, in connection with Defendants' marketing and sales of Banana Boat Kids SPF 50 sunscreen lotion products. Plaintiffs and putative class members have been, and continue to be, injured by Defendants' pattern and practice of placing into the stream of commerce sunscreen products containing a false SPF number, and largely inflated UV protection numbers, which Defendants manufacture, distribute and sell.

5.      Defendants distribute, market, produce, manufacture and sell sunscreen products under the brand name "Banana Boat."

6.      Banana Boat prides itself as being one of the nation's largest providers of sun care products, stating "[n]othing is more important to us than the well-being of the people who use our products. Consumers can rest assured that Banana Boat products provide safe and effective broad spectrum UVA and UVB protection when used as directed on the product label, and with other sun protection measures as necessary."[1]

7.      Defendants have known, or should have known, for years that Banana Boat Kids SPF 50 sunscreen lotion contains less UV protection than Defendants advertise, causing Plaintiffs and Class members to rely on a product which contains a false and significantly inflated SPF number.

8.      Defendants' statements are false and misleading to a reasonable  consumer because Banana Boat Kids SPF 50 sunscreen lotion does not contain the advertised level of SPF.  The statements are likely to deceive the public.

---

[1] http://www.redbookmag.com/life/news/a44582/preventing-sunburn-child-sunscreen/ (last accessed on June 21, 2016).

9.    With notice and knowledge of its material misrepresentations or omissions, Defendants have not offered to compensate their customers to remedy their damages.

10.    Had Plaintiffs and members of the putative classes known that Banana Boat Kids SPF 50 lotion products contain less UV protection than Defendants otherwise advertise, Plaintiffs and members of the putative classes would not have purchased the sunscreen and relied upon it to keep them protected from UV radiation.

11.    As a direct and proximate result of Defendants' deceptive acts and practices in connection with the sale of Banana Boat SPF 50 sunscreen lotion, Plaintiffs and members of the putative classes have sustained economic injury by paying for a falsely advertised product and being deprived of the full intended use of their purchased sunscreen.

12.    Plaintiffs seek damages and equitable remedies under statutory and common law claims for themselves and members of the putative classes.  Identified definitively below, the putative classes include consumers who have purchased Banana Boat Kids SPF 50 sunscreen lotion.

## JURISDICTION & VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, to a reasonable probability; and (iii) there is minimal diversity because at least one Plaintiff is a citizen of a state different from at least one Defendant.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 inasmuch as (i) many of the acts and transactions giving rise to this action occurred in this District; (ii) Defendants are authorized to conduct business in this District and have intentionally availed themselves of the

laws and markets within this District through the marketing, distribution and sale of their products in this District; and (iii) Defendants currently do substantial business in this District.

**PARTIES**

15.    Plaintiff Paul Lambrakis is a citizen of the State of New York and a resident of Kings County, New York. Over the years, and specifically in April and May of 2016, Plaintiff Lambrakis purchased Banana Boat Kids SPF 50 sunscreen lotion.

16.    Plaintiff Mark Nabong is a citizen of Illinois who resides in Cook County, Illinois. In early 2016, Plaintiff Nabong purchased two 2 ounce containers of Banana Boat Kids SPF 50 sunscreen lotion at a Walgreens in the Lakeview neighborhood of Chicago, for which he paid about $2.00 each.

17.    Plaintiff Dyan D'Aversa is a citizen of New Jersey and resides in Burlington County, New Jersey.  Plaintiff D'Aversa purchased Banana Boat Kids SPF 50 sunscreen lotion in stores located in New Jersey on several occasions between June 26, 2010 and the present, including purchases of both the 8 ounce tube of Banana Boat Kids SPF 50 sunscreen lotion and the 12 ounce "family size" pump of Banana Boat Kids SPF 50 sunscreen lotion.  The most recent such purchase occurred on or about April 20, 2016, when Plaintiff D'Aversa purchased an 8 ounce tube of Banana Boat Kids SPF 50 sunscreen lotion for $6.35 at the Target store located at 1139 White Horse Road, Voorhees Township, New Jersey.

18.    Plaintiff Tracy Fernandez is a citizen of New Jersey who resides in Essex County, New Jersey.  In March 2016, Plaintiff Fernandez paid approximately $2.99 for a 2 ounce tube of Banana Boat Kids SPF 50 lotion which she purchased at the Target Store located at 30 Kingsland Road, Clifton, New Jersey, 07014.

19.    Plaintiff Laurel Birmingham is a citizen of California who resides in Los Angeles County, California.  On May 9, 2016, Plaintiff Birmingham purchased an 8 ounce tube of Banana

Boat Kids SPF 50 sunscreen lotion for approximately $13 at a Walgreens store located in Studio City, California.

20.     Plaintiff Felipe Romero is a citizen of California who resides in South Gate, California. On July 2, 2016, Plaintiff Romero purchased an 8 ounce tube of Banana Boat Kids SPF 50 sunscreen lotion at the CVS Pharmacy located at 3710 Tweely Boulevard, South Gate, California, for which he paid $11.49.

21.     Plaintiff Christina Newland is a citizen of Florida residing in Broward County, Florida, who purchased an 8 ounce tube of Banana Boat Baby SPF 50 sunscreen lotion on June 12, 2016 for $13.99 from a Target in Deerfield Beach, Florida, and a Banana Boat Kids SPF 50 sunscreen lotion from a CVS Pharmacy in Deerfield Beach, Florida.

22.     Plaintiff Ingrid Anglin is a citizen of Florida residing in Broward County, Florida, who purchased a 6 ounce twin pack of Banana Boat Baby SPF 50 sunscreen lotion in April 2016 for approximately $10 from a Target in Deerfield Beach, Florida.

23.     Defendant Edgewell Personal Care Company is a foreign business corporation with its headquarters and principal place of business located in Shelton, Connecticut. Edgewell Personal Care Company is licensed to and does conduct business throughout the United States, including the State of New York. Edgewell Personal Care Company manufactures and markets personal care products, including Banana Boat Kids SPF 50 sunscreen lotion, to consumers in New York and across the United States.

24.     Defendant Edgewell Personal Care Brands, LLC is a Delaware Limited Liability Corporation with its headquarters in St. Louis, Missouri. Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Personal Care Company.

25.     Defendant Edgewell Personal Care, LLC is a Delaware Limited Liability Corporation with its headquarters in St. Louis, Missouri.  Edgewell Personal Care, LLC is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Personal Care Company.

26.     Defendant Playtex Products, LLC is a Delaware foreign limited liability company with its headquarters and principal place of business located in Shelton, Connecticut.  Playtex Products, LLC is licensed to and does conduct business throughout the United States including the State of New York. Playtex Products, LLC markets Banana Boat sunscreen as one of its brands, including Banana Boat Kids SPF 50.  Playtex Products, LLC is a subsidiary of Edgewell Personal Care Company.

27.     Defendant Sun Pharmaceuticals, LLC is a Delaware foreign limited liability company with its headquarters and principal place of business located in Dover, Delaware.  Sun Pharmaceuticals, LLC is licensed to and does conduct business throughout the United States, including the State of New York. Sun Pharmaceuticals, LLC is a subsidiary of Edgewell Personal Care Company.

28.     Together, Defendants Edgewell Personal Care Company, Edgewell Personal Care, LLC, Edgewell Personal Care Brands, LLC, Playtex Products, LLC, and Sun Pharmaceuticals, LLC jointly manufactured, distributed, advertised, labeled and sold Banana Boat Kids SPF 50 sunscreen lotion in New York and throughout the United States, with each defendant jointly determining that each such container of the product would bear the name "Banana Boat" and would list "SPF 50" on each uniformly-worded product label.

/ / /

/ / /

/ / /

## STATEMENT OF FACTS

A.  **Banana Boat Kids SPF 50 Sunscreen Lotion**

29.    Banana Boat Kids SPF 50 sunscreen lotion is produced, manufactured, sold and distributed by Defendants.[2]

30.    Banana Boat's website, which Edgewell Personal Care Company maintains, sets forth that Banana Boat Kids SPF 50 sunscreen lotion, is "[a]vailable as a 8oz. and 2oz. lotion tube and a 12oz. Family Size lotion pump bottle," and provides "[b]road-spectrum UVA and UVB protection."

31.    Banana Boat Kids SPF 50 sunscreen lotion is available online and in hundreds of retail stores, including but not limited to Walgreens, CVS, Overstock.com, Jet.com, Toys "R" Us, Walmart, eBay, and Target.

32.    SPF – which stands for Sun Protection Factor – is a standardized rating system for measuring the fraction of sunburn-producing UV rays that reach the skin, which is based on objective evidence and standardized protocols.

33.    The SPF number stands for the approximate measure of time a person who has applied the sunscreen can stay out in the sun without getting burned, compared to the amount of time a person with no protection will get burned in similar conditions.

34.    Thus, SPF 50 will allow a person to stay in the sun 50 times longer without burning than if that person were wearing no protection at all.

B.  **Defendants' Uniform Written Misrepresentations**

35.    Since the initial offering of Banana Boat Kids SPF 50 sunscreen lotion, each and every container of this product has borne a uniformly-worded label which identifies the name of

---

[2] http://www.bananaboat.com/products/spf50-tear-free-sunscreen (last accessed on June 20, 2016).

the product in large letters on the front as "Banana Boat Kids" and "SPF 50" as depicted in Figures 1-2, below.

**<u>Figure 1</u>**



**<u>Figure 2</u>**



36.     Since the initial offering of Banana Boat Kids SPF 50 sunscreen lotion, each and every container has borne a uniformly-worded label which includes, *inter alia*, the words "SPF 50" on the rear label of the product, as depicted in Figures 3 and 4, below.

**Figure 3**



**Figure 4**



37.    Testing conducted by the noted consumer protection periodical *Consumer Reports* in May of 2016 revealed that Banana Boat Kids SPF 50 sunscreen lotion had an SPF of only 8 and stated "the most problematic products were Banana Boat Kids Tear-Free, Sting-Free Lotion … which [was] labeled as SPF 50 but [was] found to have only SPF 8."

38.    However, the testing done by *Consumer Reports* is not the basis of Plaintiffs' claims.  Rather, the reporting on the results of the *Consumer Reports* testing gave notice to Plaintiffs of a potential problem with SPF claims on the label of Banana Boat Kids SPF 50 sunscreen lotion.

39.    Plaintiffs' claims are based on independent testing of Banana Boat Kids SPF 50 sunscreen lotion which was conducted by Plaintiffs' experts utilizing the methodology for SPF testing mandated by the FDA.

40.    The independent testing performed by Plaintiffs was conducted in compliance with all FDA testing methods embodied in FDA Final Rule, 21 CFR Parts 201 and 310, Federal Register/Vol 76, No 117/Friday, June 17, 2011/Rules and Regulations, including 21 CFR § 201.327.

41.    The results of the independent testing conducted by Plaintiffs were consistent with the *Consumer Reports* test results and confirmed that Banana Boat Kids SPF 50 sunscreen lotion had an actual SPF substantially lower than the claimed "SPF 50."

42.    Such independent testing occurred in November and December of 2018, when Plaintiffs sent samples of Banana Boat Kids SPF 50 sunscreen lotion to Consumer Products Testing Company Inc., a laboratory located in Fairfield, New Jersey, for independent testing of the product's SPF.

43.     Effectiveness testing for sunscreen is specifically described in 21 C.F.R. § 201.327(i).  The FDA requires that SPF testing use a solar simulator which provides a series of wavelengths and spectrum ranges which simulate actual sunlight, and mandates the duration of usage of the solar simulator, the number of subjects (including medical history and skin type), location and size of testing on subjects, and evaluation of the test site for each individual, as well as the statistical method for calculating the SPF value.

44.     Plaintiffs' test study met all required testing procedures for SPF testing specified under 21 C.F.R. § 201.327(i), including the use of a solar simulator with the required wavelengths and spectrum, correct number of test subjects (who were subjected to the correct medical history evaluation and physical examination), correct test sites and subsites (in size and placement), correct application of sunscreen and SPF standard to the test sites (in the correct amounts), correct UV dose applied to the test sites, and correct statistical analysis.  *See* Exhibit C, Clinical Study Final Report ("Report") (detailing specific protocol used in SPF testing).  The attached Report is incorporated herein in its entirety.  *See id.*

45.     Further, Plaintiffs' testing used ten valid test subjects, as required by 21 C.F.R. § 201.327(i), all with the required medical histories and necessary Type I, II, or III skin types needed for a valid study.  For each subject, test sites and subsites were selected and test materials were applied as required by 21 C.F.R. § 201.327(i).  After the requisite waiting period, the test subsites were exposed to UV radiation as required by 21 C.F.R. § 201.327(i).  The subsites were then evaluated and the SPF of the Banana Boat Kids SPF 50 sunscreen lotion was calculated as required by 21 C.F.R. § 201.327(i).

46.     Based on this testing, the average SPF of Banana Boat Kids SPF 50 sunscreen lotion was calculated to be 10.4 and the average Water Resistant SPF of Banana Boat Kids SPF 50

sunscreen lotion was calculated to be 9.3.  *See* Exhibit C.  The attached Report findings are incorporated herein in their entirety.  *See id.*  An SPF of 10.4 or Water Resistant SPF of 9.3 offers significantly less sunscreen protection than an SPF of 50, allowing users to remain in the sun without damage for a significantly shorter period than a true SPF 50 would allow.

47.     Defendants, as developers, manufacturers, and exclusive sellers and distributors of Banana Boat Kids SPF 50 sunscreen lotion, have been aware since the product's inception that the true SPF of this product was much lower than 50.

48.     Indeed, Defendants being the manufacturer of the Banana Boat Kids SPF 50 sunscreen lotion knew or should have known that the product does not have an SPF rating of 50.

49.     Despite this, Defendants purposely claimed an SPF factor of 50 in order to induce the false belief in consumers that they were purchasing a product which provided a high level of SPF.

50.     Defendants' false claim that Banana Boat Kids SPF 50 sunscreen lotion has an SPF rating of 50 is especially egregious and material because the product is specifically marketed by Defendants for use on children and even has the word "Kids" in the product name.

51.     Defendants have been notified of the false advertisement but have not remedied the problem.

52.     At no time did Defendants advise either Plaintiffs or putative class members that their sunscreen contained less UV protection than Defendants otherwise advertised.

53.     Plaintiffs and class members purchased the sunscreen with no reason to suspect or know that the sunscreen contained less UV protection than Defendants otherwise advertised and stated in writing on the product label.

54.     Defendants possessed specialized knowledge regarding the data and information concerning the chemical formula of the sunscreen which the Plaintiffs and class members could not and did not review.

55.     Indeed, Banana Boat Kids SPF 50 sunscreen lotion is a credence good because its properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the label by the product's manufacturer and distributor. *See* Richard A. Posner, *An Economic Approach to the Law of Evidence*, 51 STAN. L. REV. 1477, 1489 (1999) ("A good is a credence good if the consumer cannot readily determine its quality by inspection or even use, so that he has to take its quality 'on faith.'").

56.     In purchasing Banana Boat Kids SPF 50 sunscreen lotion, Plaintiffs and the class members had no choice but to necessarily and justifiably rely upon the written statements on the product as accurate.

57.     Had Plaintiffs known that the actual SPF rating of Banana Boat Kids SPF 50 sunscreen lotion was substantially lower than what Defendants stated on the product label, Plaintiffs would not have purchased the product or would not have paid as much for the product.

58.     Indeed, SPF 50 sunscreens typically sell in the marketplace for a higher price than lower SPF sunscreens. Thus, Defendants' misconduct caused Plaintiffs and the class members to pay a price premium for a purportedly SPF 50 sunscreen when they were in fact receiving SPF 10.4 or Water Resistant SPF of 9.3 sunscreen at an inflated price.

59.     Moreover, there are other less expensive SPF 50 sunscreens on the market than Defendants' Banana Boat Kids SPF 50 sunscreen lotion and thus Defendants' misconduct deprived Plaintiffs and the class members of the opportunity to buy a true SPF 50 sunscreen at a lower price.

60.     As the direct and proximate result of Defendants' false and misleading statements and omissions, Plaintiffs and class members have suffered economic injury by being deprived of the full intended use of the purchased product and have been deprived of the benefit of the bargain they were promised by Defendants.

61.     By marketing, selling and distributing Banana Boat Kids SPF 50 sunscreen lotion to purchasers in New York and throughout the United States, Defendants made actionable statements that the sunscreen contained the advertised UV protection and at all times failed to disclose that Banana Boat Kids SPF 50 sunscreen lotion did not in fact contain SPF 50.

62.     Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

63.     Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

64.     As the distributers, marketers, producers, manufacturers and sellers of the product, Defendants possessed specialized knowledge regarding the data and information concerning the chemical formula of the sunscreen which the Plaintiffs and class members could not and did not review.

65.     All of Plaintiffs' state law claims are based on misleading statements that violate FDA regulations.  Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

66.     Such parallel state claims alleging affirmative violations of FDA regulations are expressly permitted by 21 U.S.C. § 343-1(a).

67.     Further, Plaintiffs' claims arise, *inter alia*, from "front of the box" statements and symbols which are not regulated by the Nutrition Labeling and Education Act.

## CLASS ALLEGATIONS

68.     Plaintiffs seek to bring this case as a class action, pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Procedure.

69.     Plaintiffs seek certification of a nationwide class (the "Nationwide Class") defined as follows:

> All persons who purchased Banana Boat Kids SPF 50 sunscreen lotion in the United States from June 22, 2010 to the present.

70.     Additionally, or alternatively, Plaintiffs seek certification of the following sub-classes (the "State Subclass(es)" or the "subclass(es)"), defined as follows:

> New York Subclass: All persons who purchased Banana Boat Kids SPF 50 sunscreen lotion in New York between June 22, 2010 to the present.
>
> New Jersey Subclass: All persons who purchased Banana Boat Kids SPF 50 sunscreen lotion in New Jersey between June 22, 2010 to the present.
>
> California Subclass: All persons who purchased Banana Boat Kids SPF 50 sunscreen lotion in California between June 22, 2012 to the present.
>
> Florida Subclass: All persons who purchased Banana Boat Kids SPF 50 sunscreen lotion in Florida between June 22, 2012 to the present.
>
> Illinois Subclass: All persons who purchased Banana Boat Kids SPF 50 sunscreen lotion in Illinois between June 22, 2012 to the present.

71.     Excluded from any class[3] are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the sunscreen for purposes of resale, and the Judge(s) assigned to this case.

72.     Plaintiffs reserve the right to amend or modify the proposed class definitions in connection with a motion for class certification or as warranted by discovery.

---

[3] The term "class" as used herein includes the Nationwide Class and all State Subclasses.

73.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

74.    The members of the class and subclass for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

75.    Upon information and belief, the proposed Nationwide Class is composed of over 100,000 persons and each State Subclass is composed of at least 10,000 persons.

76.    No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendants.

77.    Rather, all claims in this matter arise from the identical, false, written affirmative statements on the product label as outlined in detail herein.

78.    There are common questions of law and fact affecting the rights of all class members, including, *inter alia*, the following:

   a.    The actual SPF of Banana Boat Kids SPF 50 sunscreen lotion;

   b.    Whether Defendants' act in naming the product Banana Boat Kids SPF 50 was a false, affirmative statement of fact;

   c.    Whether Defendants' act in placing a uniform written statement on the label of the product, stating "SPF 50," was a false, affirmative statement of fact;

   d.    Whether each Defendant was aware that Banana Boat Kids SPF 50 sunscreen lotion had an SPF substantially lower than 50; and

   e.    The date each Defendant became aware that Banana Boat Kids SPF 50 sunscreen lotion had an SPF substantially lower than 50.

79.    Each Plaintiff is a member of the class and subclass he or she seeks to represent.

80.     The claims of Plaintiffs are not only typical of all class and subclass members; they are identical of the members of the class and subclass they seek to represent.

81.     All claims of Plaintiffs and the class and subclass arise from the same identical, false, written statement of affirmative fact on the Banana Boat Kids SPF 50 sunscreen lotion label as described herein.

82.     All claims of Plaintiffs and the class are based on the same legal theories.

83.     Plaintiffs have no interest antagonistic to, or in conflict with, the class or subclass.

84.     Each Plaintiff will thoroughly and adequately protect the interests of the class and subclass they seek to represent, having retained qualified and competent legal counsel to represent themselves and the class and subclass.

85.     Defendants have acted and refused to act on grounds generally applicable to the class and each subclass, thereby making appropriate injunctive and declaratory relief for the class as a whole.

86.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

87.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member were less than $15 per container purchased and, as such, individual actions are not economically feasible.

88.     Common questions will predominate, and there will be no unusual manageability issues.

/ / /

/ / /

## COUNT I

### BREACH OF WARRANTY

#### On Behalf of the Nationwide Class and Each State Subclass

89.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

90.     Defendants sold the Banana Boat Kids SPF 50 sunscreen lotion in their regular course of business. Plaintiffs and the class members purchased Banana Boat Kids SPF 50 sunscreen lotion.

91.     Defendants made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Defendants and each Plaintiff and class member.

92.     Defendants gave these express warranties to Plaintiffs and each class member in written form on the labels of Banana Boat Kids SPF 50 sunscreen lotion.

93.     Defendants' written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

94.     Defendants breached the warranty because the uniform written statement on each container of Banana Boat Kids SPF 50 sunscreen lotion, claiming an SPF of 50, is false and Banana Boat Kids SPF 50 sunscreen lotion did not contain the properties Defendants represented.

95.     The false SPF information provided on the label was false when the sale took place and was undiscoverable to Plaintiffs and the class members at the time of purchase.

96.     All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and the class in terms of paying for the goods at issue.  Defendants had actual and/or constructive notice of the false labeling

information and to date have taken no action to remedy their breaches of express and implied warranty.

97.     Defendants were on notice of their breaches of express and implied warranty by virtue of the *Consumer Reports* article referenced herein, as well as numerous news stories reporting the fact that Banana Boat Kids SPF 50 sunscreen lotion had an actual SPF substantially lower than 50.

98.     Further, Defendants previously knew or should have known of the falsity of the label on Banana Boat Kids SPF 50 sunscreen lotion, due to, *inter alia*, Defendants' testing of the product.

99.     Defendants have refused to remedy such breaches.

100.    By placing Banana Boat Kids SPF 50 sunscreen lotion in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiffs and class members that the sunscreen was accurately labeled in conformance with the law.

101.    Defendants' breaches of warranty have caused Plaintiffs and Class members to suffer injuries, paying for falsely labeled products, and entering into transactions they would not have entered into for the consideration paid. As a direct and proximate result of Defendants' breaches of warranty, Plaintiffs and class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the product as promised and the value of the product as delivered.

102.    As a result of the breach of these warranties, Plaintiffs and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or

other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II

### BREACH OF IMPLIED CONTRACT THROUGH VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### On Behalf of the Nationwide Class and Each State Subclass

**(DISMISSED WITH PREJUDICE BY THE COURT'S ORDER DATED SEPTEMBER 4, 2018 BUT INCLUDED HEREIN TO PRESERVE FOR APPEAL)**

103.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

104.    By operation of law, there existed an implied contract for the sale of Banana Boat Kids SPF 50 sunscreen lotion between Defendants and each Plaintiff and class member who purchased the product.

105.    By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

106.    By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each class member.

107.    As a result of that breach, Plaintiffs and each class member suffered damages.

## COUNT III

### DECLARATORY AND INJUNCTIVE RELIEF

### On Behalf of the Nationwide Class and Each State Subclass

**(DISMISSED WITH PREJUDICE BY THE COURT'S ORDER DATED SEPTEMBER 4, 2018 BUT INCLUDED HEREIN TO PRESERVE FOR APPEAL)**

108.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

109.    Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole within the meaning of Federal Rule of Civil Procedure 23(b)(2).

110.    Plaintiffs would purchase the product again in the future if they could be assured that the product was accurately labeled as to its SPF rating and/or that the product conformed to the SPF rating stated on the product packaging. Plaintiffs are currently prevented from doing so, however, owing to the continuing refusal of Defendants to accurately label the SPF of the product.

111.    Plaintiffs, on behalf of themselves and putative Class members, seek a court order for declaratory and injunctive relief:

(a)    Declaring that the label and advertising on Banana Boat Kids SPF 50 sunscreen lotion contained false and misleading information regarding SPF protection;

(b)    Declaring that Defendants knew or should have known of the false information they provided to Plaintiffs and class members;

(c)    Enjoining Defendants from claiming that the current formulation of Banana Boat Kids SPF 50 sunscreen lotion has an SPF of 50;

(d)    Directing Defendants to remove all falsely labeled Banana Boat Kids SPF 50 sunscreen lotion containers and/or re-label such containers with accurate information regarding SPF; and

(e)    Directing Defendants to institute a court-administered corrective notice and/or advertising campaign to inform and educate consumers about the fact that the label of Banana Boat Kids SPF 50 sunscreen lotion falsely inflated its SPF level and to inform them about the true SPF content of this product.

/ / /

/ / /

/ / /

21

## COUNT IV

### QUASI-CONTRACT/DISGORGEMENT/ RESTITUTION

### On Behalf of the Nationwide Class

112.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

113.    Plaintiffs and the class members have conferred substantial benefits on Defendants by purchasing Banana Boat Kids SPF 50 sunscreen lotion, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

114.    Defendants either knew or should have known that the payments rendered by Plaintiffs and the class members were given and received with the expectation that the product would be as represented and warranted. For Defendants to retain the benefit of the payments under these circumstances is inequitable.

115.    Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the product, including representing that the product had an SPF of 50, Defendants each reaped benefits, which resulted in each Defendant wrongfully receiving profits.

116.    Equity demands disgorgement of Defendants' ill-gotten gains. Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiffs and the class members.

117.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the class members are entitled to restitution from Defendants and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants through this inequitable conduct.

## COUNT V

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

### On Behalf of the New York Subclass

118.    Plaintiff Lambrakis repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

119.    New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

120.    In its sale of goods throughout the State of New York, Defendants conduct business and trade within the meaning and intendment of New York General Business Law § 349.

121.    Plaintiff Lambrakis and the members of the New York Subclass are consumers who purchased products from Defendants for their personal use.

122.    Defendants have engaged in deceptive and misleading practices, which include, without limitation, selling Banana Boat Kids SPF 50 sunscreen lotion with less UV protection than Defendants otherwise advertise, causing Plaintiff Lambrakis and the members of the New York Subclass to overpay for the sunscreen based upon a false, inflated SPF.

123.    By reason of this conduct, Defendants have engaged and continue to engage in deceptive conduct in violation of the New York General Business Law.

124.    Defendants' actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Lambrakis and the members of the New York Subclass have sustained from having paid for and consumed Defendants' products.

125.    As a result of Defendants' violations, Plaintiff Lambrakis and the members of the New York Subclass have suffered damages and are entitled to recover those damages as well as reasonable attorney's fees from Defendants.

## COUNT VI

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350

### On Behalf of the New York Subclass

126.    Plaintiff Lambrakis repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

127.    New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

128.    Pursuant to the statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

129.    Defendants' labeling and advertising of Banana Boat Kids SPF 50 sunscreen lotion were and are misleading in a material respect due to the false labeling and statements regarding its products as described in detail previously, and Defendants have therefore directly violated New York General Business Law § 350, causing damage to Plaintiff Lambrakis and the members of the New York Subclass.

130.    As a result of Defendants' violations, Plaintiff Lambrakis and the members of the New York Subclass have suffered damages due to the violation and are therefore entitled to recover damages and reasonable attorney's fees from Defendants.

/ / /

/ / /

/ / /

/ / /

24

## COUNT VII

### NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1, *et seq.*

### On Behalf of the New Jersey Subclass

131.    Plaintiffs D'Aversa and Fernandez repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

132.    The New Jersey Consumer Fraud Act ("NJ CFA") clearly applies to all sales of Banana Boat Kids SPF 50 sunscreen lotion sold in New Jersey.

133.    The NJ CFA was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. *See Marascio v. Campanella*, 298 N.J. Super. 491, 500 (App. Div. 1997).

134.    The NJ CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. *See Furst v. Einstein Moomjy*, 182 N.J. 1, 11-12 (2004) ("The Consumer Fraud Act is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").

135.    With regard to the NJ CFA, "[t]he available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation." *New Mea Const. Corp. v. Harper*, 203 N.J. Super. 315, 319 (App. Div. 1986).

136.    For this reason, the "history of the Act is one of constant expansion of consumer protection." *Kavky v. Herballife International of America*, 359 N.J. Super. 497, 504 (App. Div. 2003).

137.    N.J.S.A. 56:8-2 of the NJ CFA prohibits "unlawful practices," which are defined as:

> "The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby."

138.    Banana Boat Kids SPF 50 sunscreen lotion is a "credence good," because its properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the label by the product's manufacturer and distributor. *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010).

139.    The New Jersey Supreme Court in *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010), spoke regarding the relationship between dishonest product labeling and credence goods, stating: "A rational consumer does not randomly take a bottle of pills off a shelf and then purchase it without reading the packaging and labeling."

140.    In order to state a cause of action under the NJ CFA, a plaintiff does not need to show reliance by the consumer. *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 332 N.J. Super. 31, 43, 752 A.2d 807 (App. Div. 2000); *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607-608, 691 A.2d 350 (1997) (holding that reliance is not required in suits under the NJ CFA because liability results from "misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby'").

141.    Rather, the NJ CFA requires merely a causal nexus between the false statement and the purchase, not actual reliance. *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010) ("It bears repeating that the CFA does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss.").

142.    The purchase of a credence good, where the label on the product contains misrepresentations of material fact, by itself, establishes a presumption of a causal nexus under the NJ CFA.  *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010).

143.    By the acts alleged herein, Defendants have violated the NJ CFA.

144.    Specifically, Defendants have made identical, false, written, misstatements of affirmative fact to Plaintiffs and each member of the New Jersey Subclass on the label of each container of Banana Boat Kids SPF 50 sunscreen lotion sold in New Jersey, as previously described in detail herein.

145.    These statements were false when made and Defendants knew that these statements were false when made.

146.    As a result of these false, written affirmative misstatements of material fact, Plaintiffs and each member of the New Jersey Subclass have suffered an ascertainable loss.

147.    Specifically, Plaintiff D'Aversa, Plaintiff Fernandez and each member of the New Jersey Subclass have been deprived of the benefit of the promised bargain – a valid measure of "ascertainable loss" under the NJ CFA according to the New Jersey Supreme Court and New Jersey Appellate Division – in that Plaintiff D'Aversa and Plaintiff Fernandez and each member of the New Jersey Subclass received something less than what was represented by Defendants on the product's label.

## COUNT VIII

## NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT N.J.S.A. 56:12-14, *et seq.*

## On Behalf of the New Jersey Subclass

148.    Plaintiffs D'Aversa and Fernandez repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

149.    Plaintiff D'Aversa, Plaintiff Fernandez and each the member of the New Jersey Subclass are "consumers" within the meaning of N.J.S.A. 56:12-15 and 16.

150.    Defendants are "sellers" within the meaning of N.J.S.A. 56:12-15 and 16.

151.    The product label on Banana Boat Kids SPF 50 sunscreen lotion is both a consumer "notice" and "warranty" within the meaning of N.J.S.A. 56:12-15 and 16.

152.    By the acts alleged previously allege din detail herein, Defendants have violated N.J.S.A. 56:12-15 and 16 because, in the course of Defendants' business, Defendants have displayed and/or offered written consumer notices and warranties to Plaintiff D'Aversa, Plaintiff Fernandez and each member of the New Jersey Subclass which contained provisions which violated their clearly established legal rights under New Jersey state law, within the meaning of N.J.S.A. 56:12-15 and 16.

153.    Pursuant to N.J.S.A. 56:12-17, this class complaint seeks a statutory penalty of $100 for each New Jersey Subclass member, as well as actual damages and attorney's fees and costs.

## COUNT IX

### California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### On Behalf of the California Subclass

154.    Plaintiffs Birmingham and Romero repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

155.    The Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* (the "UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

156.    In the course of conducting their business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Cal. Civil Code §§ 1750, *et seq.*

157.    Plaintiffs Birmingham and Romero and the other California Subclass members reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

158.    Defendants' actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engage in deceptive and false advertising, and misrepresent and omit material facts regarding their products, and thereby offend an established public policy, and engage in immoral, unethical, oppressive, and/or unscrupulous activities that are substantially injurious to consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq*.

159.    Business & Professions Code §§ 17200, *et seq*., also prohibits any "fraudulent business act or practice."

160.    Defendants' actions, claims, nondisclosures, and misleading statements, as alleged previously in detail in this Complaint, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code §§ 17200, *et seq*.

161.    There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

162.    As a result of Defendants' pervasive false marketing, including deceptive and misleading acts and omissions as detailed in this Complaint, Plaintiffs Birmingham and Romero and each member of the California Subclass have in fact been harmed as described above.

163.    If Defendants had not misrepresented Banana Boat Kids SPF 50 sunscreen lotion as being of a higher SPF level than it was, Plaintiffs Birmingham and Romero and the other

California Subclass members would not have purchased Defendants' product or would not have paid as much for the product as they did.

164.    As a result of Defendants' unlawful, unfair, and fraudulent practices, Plaintiff Birmingham, Plaintiff Romero, and the other California Subclass members  have each suffered injury in fact and lost money.

165.    As a result of their deception, Defendants have been able to reap unjust revenue and profit in violation of the UCL.

166.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate for Plaintiff Birmingham, Plaintiff Romero, and the other California Subclass members.

167.    As a result of Defendants' conduct in violation of the UCL, Plaintiff Birmingham, Plaintiff Romero, and the other California Subclass members have each been injured as alleged herein in amounts to be proven at trial because they purchased the product without full disclosure of the material facts discussed above.

168.    As a result, Plaintiff Birmingham, Plaintiff Romero, and the other California Subclass members seek restitution and disgorgement of all money obtained from members of the California Subclass as a result of unlawful, unfair, and/or fraudulent conduct, and also seek injunctive relief, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## COUNT X

**California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq*.**

**On Behalf of the California Subclass**

169.    Plaintiffs Birmingham and Romero repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

170.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq*. (the "CLRA"). Plaintiff Birmingham, Plaintiff Romero, and each member of the California Subclass is a consumer as defined by California Civil Code § 1761(d).  The affected products are goods within the meaning of the CLRA.

171.    Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff Birmingham, Plaintiff Romero, and the other California Subclass members, which were intended to result in, and did result in, the sale of the affected products: (5) Representing that [the products] have … characteristics, … uses [or] benefits … which they do not have; (7) Representing that [the products] are of a particular standard, quality, or grade … if they are of another; and (9) advertising goods … with intent not to sell them as advertised.

172.    Defendants violated the CLRA by marketing and advertising the Banana Boat Kids SPF 50 sunscreen lotion in the manner described in detail previously herein, when they knew, or should have known, that the labeling and advertisements were deceptive, false and misleading.

173.    Defendants were in a position to know, both from its own product knowledge and independent testing that the SPF of the product fell far short of its advertised levels.

174.    Defendants intended that Plaintiffs Birmingham and Romero, and the other California Subclass members, would rely on the false and misleading representations, and any reasonable consumer would deem the false and misleading representations material to the purchase of the product.

175.    California Civil Code § 1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate California Civil Code § 1770.

176.    On June 20, 2016, Plaintiff Birmingham sent Defendants a letter demanding that Defendants rectify the problems listed herein. Defendants have failed to rectify or agree to rectify

31

the problems associated with the actions detailed above and give notice to all affected consumers with thirty (30) days of the written notice pursuant to § 1782 of the CLRA.

177.    Accordingly, Plaintiffs Birmingham and Romero seek to recover actual or statutory compensatory/monetary damages for themselves and each member of the California Subclass as authorized by California Civil Code § 1780(a)(1), restitution as applicable and authorized under California Civil Code § 1780(a)(3), and punitive damages as authorized by California Civil Code § 1780(a)(4), which are appropriate in this case in light of Defendants' knowing, intentional, fraudulent and unconscionable conduct, Defendants' reckless disregard of its legal obligations to the members of California Subclass, and/or as otherwise recoverable under California Civil Code § 1780(a)(4).  A copy of the letter is attached hereto as Exhibit A.

178.    Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit B is an affidavit showing that this action has been commenced in the proper forum.

### COUNT XI

**Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.**

**On Behalf of the Illinois Subclass**

179.    Plaintiff Nabong repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

180.    This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. ("ICFA").

181.    The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." 815 ILCS 505/1.

182.    Plaintiff Nabong and the Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e).

183.    Defendants were engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

184.    815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact … in the conduct of any trade or commerce."

185.    815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act."

186.    Defendants' unfair and deceptive practices, including falsely labeling Banana Boat Kids SPF 50 sunscreen lotion as SPF 50 when it is not, are likely to mislead – and have mislead – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2 and 21 U.S.C. § 352. This includes misleading Plaintiff Nabong and the Illinois Subclass.

187.    Defendants have violated the ICFA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

188.    Plaintiff Nabong and the members of the Illinois Subclass have been aggrieved by Defendants' unfair and deceptive practices in that they purchased the product, which they would not have purchased or would not have paid as much for had they known the true facts.

189.    The damages suffered by Plaintiff Nabong and the Illinois Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

190.    Pursuant to 815 ILCS 505/10a, Plaintiff Nabong and the Illinois Subclass seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement. Additionally, pursuant to 815 ILCS 505/10a, Plaintiff Nabong and the Illinois Subclass make claims for economic damages, punitive damages, and attorneys' fees and costs.

## COUNT XII

**Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.**

### On Behalf of the Florida Subclass

191.    Plaintiffs Newland and Anglin repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

192.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. §§ 501.201, *et seq*.

193.    The express purpose if the Act is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

194.    The sale of the product at issue in this action was a "consumer transaction" within the scope of the FDUTPA. Fla. Stat. §§ 501.201-501.213.

195.    Plaintiff Newland, Plaintiff Anglin, and each member of the Florida Subclass are "consumers" as defined by the FDUTPA. Fla. Stat. § 501.203.

196.    Defendants' product is a "good" within the meaning of the FDUTPA.

197.    Defendants are engaged in trade or commerce within the meaning of the FDUTPA.

198.    The FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

199.    The FDUTPA provides that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Fla. Stat. § 501.204(2).

200.    Defendants' unfair and deceptive practices, including labeling the Banana Boat Kids SPF 50 sunscreen lotion as SPF 50 when it is not, are likely to mislead – and have misled – the consumer acting reasonably under the circumstances. Fla. Stat. § 500.04; 21 U.S.C. § 343. This includes misleading Plaintiff Newland, Plaintiff Anglin, and the members of the Florida Subclass.

201.    Defendants have violated the FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

202.    Specifically, Defendants have represented that the product has a SPF rating of 50, when, in fact, the product does not have an SPF rating of 50 and provides far less SPF protection.

203.    Plaintiff Newland, Plaintiff Anglin, and each member of the Florida Subclass have been aggrieved by Defendants' unfair and deceptive practices in that they purchased and used Defendants' product.

204.    The damages suffered by Plaintiff Newland, Plaintiff Anglin and each member of the Florida Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as described above.

205.    Plaintiff Newland, Plaintiff Anglin, and each member of the Florida Subclass Plaintiffs seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of Defendants.  Fla. Stat. § 501.211(1).

206.    Additionally, Plaintiff Newland, Plaintiff Anglin, and each member of the Florida Subclass make claims for actual damages, attorney's fees and costs.  Fla. Stat. §§ 501.2105, 501.211(2).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief against Defendants as set forth below:

a.    Certify the proposed Nationwide Class and all state Subclasses as class actions pursuant to Federal Rule of Civil Procedure 23;

b.    Appoint each Plaintiff as representative of the applicable class and subclass;

c.    Appoint interim lead counsel as co-lead counsel for the class and subclasses;

d.    Enter an order for injunctive and declaratory relief as described herein;

e.    Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein and/or restitution, to include interest and pre- judgment interest;

f.    Award Plaintiffs reasonable attorneys' fees and costs; and

g.    Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  December 21, 2018          KAPLAN FOX & KILSHEIMER LLP

By:  _/s/ *Frederic S. Fox*_____
          Frederic S. Fox

850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212-687-1980
Fax: 212-687-7714
Email: ffox@kaplanfox.com
***Liaison Counsel for Plaintiffs***

NAPOLI SHKOLNIK PLLC
Hunter Jay Shkolnik
Paul Brian Maslo
Salvatore C. Badala
360 Lexington Avenue, 11th Floor
New York, NY 10017
Telephone: 212-397-1000
Fax: 646-843-7603
Email: pmaslo@napolilaw.com
Email: hunter@napolilaw.com
Email: sbadala@napolilaw.com
***Interim Co-Lead Counsel for Plaintiffs***

THE SULTZER LAW GROUP, PC
Janine Lee Pollack
351 West 54th Street, Unit 1C
New York, NY 10019
Telephone:  212-969-7811
Fax:  888-749-7747
Email:  pollackj@sultzerlawgroup.com
***Interim Co-Lead Counsel for Plaintiffs***

WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLP
Carl V. Malmstrom
111 W. Jackson Street, Suite 1700
Chicago, IL 60604
Telephone: 312-984-0000
Fax: 312-214-3110
Email: malmstrom@whafh.com

DeNITTIS OSEFCHEN PRINCE, PC
Stephen P. DeNittis
Joseph Osefchen
Shane Prince
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: 856-797-9951
Fax: 856-797-9978
Email: sdenittis@denittislaw.com
Email: josefchen@denittislaw.com
Email: sprince@denittislaw.com
*Interim Co-Lead Counsel for Plaintiffs*

KAPLAN FOX & KILSHEIMER LLP
Laurence D. King
Mario M. Choi
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Fax:  415-772-4707
Email: lking@kaplanfox.com
Email: mchoi@kaplanfox.com
*Additional Counsel for Plaintiffs*

SAUDER SCHEKLOPF LAW FIRM
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: 888-711-9975
Fax: 610-421-1326
Email:  jgs@sstriallawyers.com
Email:  mds@sstriallawyers.com
Email:  jbk@sstriallawyers.com
*Additional Counsel for Plaintiffs*

IMBESI LAW, P.C.
Brittany Weiner
Seth Asher Nadler
450 Seventh Avenue, Suite 1408
New York, NY 10123
Telephone: 646-380-8172
Fax: 212-658-9177
Email: brittany@lawicm.com
Email: seth@lawicb.com
*Additional Counsel for Plaintiffs*

FARAHI LAW FIRM APC
Justin Farahi
Raymond M. Collins
22760 Hawthorne Boulevard Suite 230
Torrance, CA 90505
Telephone: 310-774-4500
Fax: 424-295-0557
Email: justin@farahilaw.com
Email: raymondfarahilaw@gmail.com
*Additional Counsel for Plaintiffs*